216 P.2d 392

**MAGMA COPPER CO. v. ALDRETE et al.**

No. 5226.

Supreme Court of Arizona.

March 20, 1950.

Guynn & Twitty, of Phoenix, for petitioner.

H. S. McCluskey, Phoenix, Robert E. Yount and Donald J. Morgan, Phoenix, of counsel, for respondents Industrial Commission of Arizona.

LA PRADE, Chief Justice.

This is a proceeding to review an award of the Industrial Commission in favor of Anna Aldrete on account of her son Charles Richard Higuera, a minor, six years of age at the time of the final award. The asserted basis for the award was that the child was a dependent stepchild of one Andres Aldrete, who was killed as the result of an accident arising out of and in the course of his employment by respondent Magma Copper Company. This portion of the award is challenged on the ground that the evidence conclusively shows that the child was not totally or partially dependent upon his deceased stepfather. At the date of this award, the mother of the child was the beneficiary of a previous award on account of the child, made by the commission, which had its origin in the death of the child's father, who also lost his life by accident arising out of and in the course of his employment with this identical company. The latter award called for monthly payments of $29.57 to continue until the child attained the age of eighteen years or sooner married or died.

In addition to the amount awarded on account of the child under the terms and

provisions of the Workmen's Compensation Act, A.C.A.1939, § 56-901 et seq., due to the death of the natural father, the mother received for the use and benefit of the child the further sum of $12.72 monthly from the Old Age Benefits Division of the Federal Social Security Administration as a result of retirement income credit which had been built up by his natural father prior to the latter's death. Thus the mother, since the boy's birth (he was a posthumous child), has had available from two different sources a guaranteed monthly income of $42.29 for her child's support. The challenged portion of the award predicated on the death of the stepfather Mr. Aldrete provides for monthly payments to this child of $46.15. Mrs. Aldrete testified that in maintaining the boy she incurred no expense other than for food and clothing and these items did not exceed $37.50 per month.

Mr. Aldrete previously had been married and divorced and was the father of a son, Thomas, who was in the custody of and living with his natural mother, and to whose support the father was contributing under the terms of a decree of divorce the sum of $25 monthly, and according to his widow the additional sum of $10 to $12 monthly to cover clothes and incidentals.

Mr. Aldrete, upon his marriage to Mrs. Higuera, moved into the home which she and her son had been occupying since the death of Mr. Higuera, and the three lived together under one roof until the date of his death. Upon the death of Mr. Aldrete, his divorced wife, Amelia Aldrete, filed claim with the commission for death benefits on behalf of her minor child, Thomas R. Aldrete. The commission issued its findings and award providing for the payment of compensation to the minor son of the deceased and also for payment of burial expenses in the sum of $150. The award to the stepson also provided for payment of burial expenses in the sum of $150. It is thus seen that two awards were made for burial expenses. The correctness of this latter award for burial expenses is also challenged.

The commission found and now contends that the stepson, Charles Richard Higuera, was totally dependent upon his stepfather, and therefore that the widow is entitled to the maximum death benefits payment under the act on account of the child. Sections 56-953 and 56-960, A.C.A.1939, are the statutory sections which must be satisfied if the commission's award of the maximum death benefits on account of the child is to stand. An award for the benefit of a stepchild based upon any premise other than the provisions of the sections above mentioned must fall.

Section 56-953(a) insofar as it is pertinent to this case reads:

"Death benefits.—(a) In case of an injury causing death, the compensation therefor shall be known as a Death Benefit, and shall be payable in the amount, for the

period, and to and for the benefit of the persons following:

"1. Burial expenses, not to exceed one hundred fifty dollars ($150), in addition to the compensation;

"2. To the widow, if there is no child, thirty-five (35) per cent of the average wage of the deceased, to be paid until her death or remarriage, with two (2) years' compensation in one sum upon remarriage;

"3. * * *

"4. To the widow or widower, if there is a child or children, the additional amount of fifteen (15) per cent of such wage for each child until the age of eighteen (18) years, the total not to exceed sixty-six and two-thirds (66 2/3) per cent of the average wage;"

Section 56-960 is quoted in full and reads as follows:

"*Persons presumed totally dependent— Date of determination—To whom death benefits payable.*—The following persons shall be conclusively presumed to be totally dependent for support upon a deceased employee:

"1. A wife upon a husband whom she has not voluntarily abandoned at the time of the injury;

"2. A husband, mentally or physically incapacitated from wage earning, upon a wife whom he has not voluntarily abandoned at the time of the injury;

"3. A natural, posthumous, or adopted child, under the age of eighteen (18) years, or over that age if physically or mentally incapacitated from wage earning, upon the parent with whom it was living at the time of the injury, there being no surviving parent. Step-parents may be regarded as parents, if dependent, and a step-child as a natural child if dependent.

"Questions of dependency and the extent thereof shall be determined as of the date of the injury to the employee, and their right to any death benefit shall become fixed as of such time, irrespective of any subsequent change in conditions, and the death benefits shall be directly recoverable by and payable to the dependent entitled thereto."

Petitioner makes no complaint as to the award to the widow, and in order to avoid any financial embarrassment or hardship to her waives any right to protest the award as to her. Here we are considering only the rights of a stepchild who, as a matter of law, is not "conclusively presumed" to be totally dependent upon the stepparent with whom it was living at the time of injury causing death. Section 56-960 very clearly makes an exception of stepchildren in that the statute specifically provides: "Step-parents may be regarded as parents, if dependent, *and a step-child as a natural child if dependent.*" (Emp. sup.) In view of this clear and unambiguous language and the rule as established by this court in Ocean Accident & Guarantee Corp. v. Industrial Comm., 32 Ariz. 54, 255 P. 598; 34 Ariz. 175, 269 P. 77;

Magma Copper Co. v. Naglich, 60 Ariz. 43, 131 P.2d 357; Dustin v. Industrial Comm., 43 Ariz. 96, 29 P.2d 155; Waite v. Industrial Comm., 68 Ariz. 299, 205 P.2d 579, we hold that Charles Higuera does not fall within the class "conclusively presumed" to be totally dependent, and that before any award can be made to the widow on account of the stepchild it would have to be established that the child was in fact totally or partially dependent upon the stepfather for support and maintenance at the time of the injury which caused the latter's death.

The commission found that the child was totally dependent upon the deceased Aldrete, and seeks to justify its finding of total dependency upon the following additional facts. Shortly after the birth of the child the mother purchased three life insurance policies, wherein the child was the insured and she the beneficiary, which required monthly premium payments of. $18.34. The mother and the commission contend that she was privileged to expend funds made available on account of the child in this manner regardless of the fact that under the underlying theory relating to death benefits under the Workmen's Compensation Law they had been made available for his support, if totally or partially dependent. Upon the testimony of the mother the commission found that one of the considerations for the marriage contract entered into by her with Mr. Aldrete was that (1) their community earnings, after the marriage, were to be used in part for payment of the support money directed by the divorce decree for the support of deceased's son Thomas; and (2) that Mr. Aldrete would maintain and support her child Charles Higuera. A specific finding is to the effect that this contract was recognized, fulfilled, and carried out by Mr. Aldrete prior to and at the time of his death, and that he had claimed the child as a dependent for income tax purposes.

With reference to this question of dependency petitioner submits the following proposition of law: "That no one not belonging to the class of persons 'conclusively presumed' to be dependent is entitled to be regarded as totally dependent or partially dependent whose financial resources at his command, or within his power to command, are sufficient to sustain himself in a manner befitting his class and position in life."

■■ The law does not impose upon a stepfather any legal liability to support a stepchild. Ocean Accident & Guarantee Corp. v. Industrial Comm., 34 Ariz. 175, 269 P. 77. Counsel for respondent do not contend that there existed any legal responsibility on the part of the stepfather growing out of the bare fact of the marriage, but insist that a legal responsibility existed by virtue of the prenuptial contract, which contention we will later consider. Admitting for the moment that there was a legal obligation on account of said contract, it would not be determinative of

the right asserted. The existence of such an obligation is only one of the factors to be considered in determining dependency as pointed out in Ocean Accident and Guarantee Corporation v. Industrial Comm., 32 Ariz. 54, 65, 255 P. 598, 601, where we said: "In determining actual dependency, it was proper for the commission to take into consideration the deceased's legal obligation to support, though under the authorities this alone was not sufficient to establish it. 'The existence or nonexistence of a legal obligation * * * though persuasive, and a factor to be considered in determining dependency, is not conclusive, unless made so by statute.' (Citing cases.)"

■ The provision for death benefits made by our law was adopted for the purpose of furnishing some means for support lost through the death of the provider. Such benefits are a charge upon industry and are for *dependents* or those presumed to be dependent. Dependency is a question of fact in all cases solely within the determination of the Industrial Commission, whose findings of fact will not be disturbed on appeal if supported by any substantial evidence. Such is our oft-repeated rule. But where the evidence, as here, is not in conflict, the question of the fact of total dependency becomes one of law only. Waite v. Industrial Comm., supra.

■ We can say that the evidence here is not in conflict if we adopt the proposition of law propounded by petitioner. In support of this proposition we are cited to

the holding of the Supreme Court of Connecticut in Gherardi v. Connecticut Co., 92 Conn. 454, 103 A. 668, 670, where the court had the following to say regarding dependency except in the "conclusively presumed" classes. "We have no purpose to attempt to phrase a complete and exhaustive definition of the word 'dependent' as our statute uses it. But this much may be said broadly and generally that *no one,* not belonging to the enumerated classes of persons conclusively presumed to be dependent, *is entitled to be regarded as a dependent or partial dependent whose financial resources at his command* or within his power to command by the exercise of such efforts on his part as he reasonably ought to exert in view of the existing conditions, *are sufficient to sustain himself and family in a manner befitting his class and position in life* without being supplemented by the outside assistance which has been received or some measure of it." (Emp. sup.)

With this statement of law we are in accord. When applied to the uncontradicted facts before us it is patent that the finding of total dependency is erroneous. At most there could have been only partial dependency since the mother, for the use and benefit of the child, had a guaranteed monthly income of $42.29. At this point we are constrained to observe that it does not appear to us that a case of dependency can be made by diverting the child's support money into the purchase of life insurance. Such purchases do not fall within the concept that actuated the legislature in

making support moneys available for dependents. The greater portion of premiums paid for life insurance are in payment of the risk assumed. The mother by these purchases was protecting her "dependency" upon the child. We agree with counsel for respondent when, in referring to the moneys used to pay premiums, he says, "The widow of Charles Richard Higuera had not been fully utilizing the death benefits payable to her for his immediate support, for actual necessaries," but we are unable to agree with the further statement that in making such payments she "was conserving a substantial part thereof for his later education."

Respondent's theory that the stepson's dependency grows out of a contract, the financial impact of which will be borne by the compensation fund, strikes us as novel. This fund under the provisions of the law creating it is made available to alleviate want caused by the death or injury of a workman, stricken down as an industrial casualty and leaving dependents. The fund is held in trust and made available under the law to insure support and maintenance for those to whom the employee and industry are obligated. Any unwarranted draft on the fund is prejudicial to the rights of those maintaining it and those legally taking from it and looking to it for sustenance.

■ Respondent seriously contends that the fund is obligated in this instance to provide funds for the use and benefit of a person not in fact dependent on the one stricken down as an industrial casualty and to whom industry owes no obligation unless its employee had bound it and the fund to pay an obligation that he had magnanimously assumed. Is it the law that an employee can relieve one of supporting himself, though amply able to do so, by contracting with the party directly or with a third person for the party's benefit, and thus make the party his dependent within the meaning of the Workmen's Compensation Law? Our answer is no.

We are cited to the general rule that one for whose benefit a contract is made, although not a party to the agreement and not furnishing the consideration therefor, may maintain an action against the promisor. See Anno. 81 A.L.R. 1271, 1279; 12 Am.Jur., Contracts, section 277; Shreeve v. Greer, 65 Ariz. 35, 173 P.2d 641, citing Arizona cases. We do not believe that this rule of law is applicable to the fact situation under consideration. If the issue was whether the child had an action against the stepfather, perhaps the rule contended for might have some application, but such is not the case. The issue here is whether under the law creating this fund it was obligated to care for this child as being a dependent within the concept of dependency referred to in this law. The dependency provided for in the law for those not conclusively presumed to be dependent is actual dependency, which implies some degree of need, as distinguished from a claim of dependency which is not genuine or is

contrivingly created. See Ferriter's Case, 269 Mass. 267, 168 N.E. 747.

The award of May 24, 1948 (affirmed in Supplemental Award March 8, 1949) directing the payment of $150 to cover burial expenses is erroneous in this instance. The provision for burial expenses is contained in section 56-953(a), supra, and so far as applicable reads: "Burial expenses, not to exceed one hundred fifty ($150), in addition to the compensation".

Funds for the burial had been previously allowed in the award for the benefit of the natural son of the deceased. An additional allowance for burial expense is not authorized. Respondent now admits that it misconceived the application of section 56-953 (c) which provides "In the event of the death of a dependent before the expiration of the time named in the award, the funeral expenses of such person, not to exceed one hundred fifty dollars ($150), shall be paid." The allowable burial expense here was not for a deceased dependent under the statute last quoted, but was for the burial of the deceased employee upon whom dependency was claimed.

No jurisdiction being vested in the Supreme Court to modify an award of the Industrial Commission—as to affirm in part and set aside in part, section 56-972, A.C. A.1939; Paramount Pictures v. Industrial Comm., 56 Ariz. 352, 106 P.2d 1024—the award of the commission is set aside.

UDALL, STANFORD, PHELPS and DECONCINI, JJ., concur.