498 P.2d 599

**Ramiro G. GARZA, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Centennial Valley Farms, Respondent Employer,**

**Continental Casualty Company, Respondent Carrier.**

**No. I CA–IC 696.**

Court of Appeals of Arizona, Division 1, Department A.

July 6, 1972.

Rehearing Denied Sept. 28, 1972.

See 501 P.2d 399.

Review Denied Oct. 24, 1972.

526

Langerman, Begam & Lewis by Jack Levine, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Comm. of Ariz., Phoenix, for respondent.

Spencer K. Johnston, Phoenix, for respondent carrier.

STEVENS, Presiding Judge.

■ This matter can be categorized as "the case of the multiple notices of claim

status." The two main issues for our consideration are the finality of the determination of the average monthly wage and the effect of the carrier's 11 March 1971 notice of suspension of benefits. In view of our opinion that the award must be set aside, we do not answer all of the potential questions. After an award has been set aside by an appellate court the claim is presented as a trial *de novo* and new evidence may be introduced. Rutledge v. Industrial Commission of Arizona, 108 Ariz. 61, 492 P.2d 1168 (1972).

It is necessary to set forth in unusual detail the procedural steps which led up to the hearing which was held on 17 May 1971 and out of which hearing the award now in question arose.

On 9 July 1970 Garza, age 49, was run over by the employer's truck. He received a chest injury of a crushing type involving his right ribs 2–3–4–5–6–7–8 with a rib override, that is, the fractures overlapped. On 17 August 1970 he underwent surgery for the removal of segments of the third, fourth, fifth and sixth ribs because of the overlapping. This was medically described as thoracotomy and thoracoplasty.

Under date of 22 September 1970, filed 22 October 1970, there is the first report of injury by the employer.

Under date of 16 December 1970, filed on 18 December 1970, there is a carrier's notice of claim status which advises that the claim had been accepted for benefits; and that initial checks in the sum of $917.40 were issued covering time lost commencing 9 July 1970 through 17 November 1970 based upon an average monthly wage of $310.00. The basis of the average monthly wage calculation, which is rather confusing, was forwarded to the Commission. One portion of it indicates that he worked for the employer at the time of injury during the months of April to July, being four months at $600.00 a month or $2400. In this connection we note that he was injured on 9 July 1970. The amounts noted as being received from three separate employers totaled $3,720 which was divided

by 12 months to arrive at the average monthly wage of $310. This notice of claim status contains a notice to the claimant advising that he may apply for a hearing within 60 days from the date of the mailing of the notice.

On 30 December 1970 the Commission issued its notice of average monthly wage in which it approved the carrier's determination of $310 per month. The Court observes that there is nothing in the file to disclose that this was a Commission action and the notice does not purport to be signed by any member of the Commission. The notice contains a 60-day clause.

Under date of 15 January 1971 the petitioner employed his present counsel and the notice of employment was filed on 18 January 1971. Apparently a copy thereof was sent to the carrier by the Commission on 11 February 1971. Under date of 15 January 1971, filed on 18 January 1971, there is a request for a hearing in which there is a protest as to the determination of the average monthly wage. It is urged that the average monthly wage should be $688. The request for hearing indicated that it was directed to the notice of claim status issued by the carrier on 16 December 1970 and there is no check mark opposite that portion of the form relating to the 30 December 1970 award or decision entered by The Industrial Commission. It was later held by the hearing officer and affirmed by the Commission that the determination of the average monthly wage under date of 30 December 1970 had become *res judicata* since no request for hearing was filed within sixty days thereof. A request for hearing was filed subsequent to the 30 December 1970 notice of average monthly wage issued by the Commission but it was directed to the notice of claim status issued by the carrier and not to the notice issued by the Commission.

Under date of 4 February 1971, filed on 5 February 1971, the carrier issued a notice of claim status which provided that temporary compensation was terminated on 1 November 1970 for the reason that the

claimant had been discharged with no residual permanent disability. It is here noted that on 16 December 1970 the carrier reported that it had paid the petitioner through 17 November 1970. In this connection also note the two notices of claim status which bear date of 22 April 1971.

Under date of 12 February 1971, filed on 16 February 1971, the petitioner filed a request for hearing which was directed to the carrier's 4 February 1971 notice of claim status.

Under date of 17 February 1971, filed on 18 February 1971, the carrier wrote to the petitioner's counsel requesting the completion of a wage statement so that the carrier could review the claimant's average monthly earnings. The file does not contain a follow-up on this request.

On 25 February 1971 the hearing officer issued a notice of hearing specifying the hearing date to be on 17 May 1971.

Under date of 11 March 1971 filed on 16 March 1971, the carrier issued a notice of suspension of benefits effective 17 February 1971 by reason of the alleged refusal of the petitioner to submit to a medical examination, that is, that he failed to keep an appointment on 17 February with Dr. Courser.

Under date of 22 March 1971, filed 23 March 1971, there was a request for hearing in relation to the carrier's notice of 11 March 1971. The request for hearing placed in issue the legality and the propriety of the suspension of the petitioner's benefits.

On 22 April 1971, filed on 26 April 1971, the carrier issued two notices of claim status. One rescinded the notice of claim status of 4 February 1971 and the other terminated temporary compensation as of 1 November 1970 for the reason that the claimant had been released for regular work. In this connection see the request for hearing dated 11 May 1971.

Under date of 29 April 1971, filed on 4 May 1971, the carrier issued a notice of claim status, stating that the claimant had been discharged with no residual permanent disability and that medical benefits were terminated as of 2 April 1971. This was apparently based upon the 2 April 1971 report of Paul E. Palmer, M.D. In this connection see the request dated 13 May 1971.

Under date of 11 May 1971, filed on 14 May 1971, there was a request for hearing directed to the carrier's notice of 22 April 1971.

Under date of 13 May 1971, filed on 14 May 1971, there was a request for hearing directed to the carrier's notice of 29 April 1971.

It was on this confused state of the record that the hearing was held on 17 May 1971.

At the commencement of the hearing the petitioner's counsel asked that the issues be clarified and he was advised, in effect, that the issues were framed by the various matters hereinbefore recited.

## AVERAGE MONTHLY WAGE

A.R.S. § 23-1041, subsec. D is as follows:

> "The term 'monthly wage' means the average wage paid during and over the month in which the employee is killed or injured."

See also Vinyard v. Industrial Commission of Arizona, 106 Ariz. 164, 472 P.2d 33 (1970).

A.R.S. § 23-1061, subsec. F, as of the date of the injury was, in part, as follows:

> "Within thirty days of the payment of the first installment of compensation, the carrier or self-insuring employer shall notify the employee and commission of the average monthly wage of the claimant as calculated, and the basis for such determination. *The commission shall thereupon make its own independent determination of the average monthly wage pursuant to § 23-1041.* The commission shall within thirty days after receipt of such notice notify the em-

ployee, employer and carrier of such determination." (Emphasis added).

Based on the requirement that "[t]he commission shall thereupon make its own independent determination of the average monthly wage * * *" the carrier urged before the hearing officer and urges in this Court that since the petitioner's 15 January 1971 request for a hearing addressed to the carrier's 16 December 1970 notice of claim status and not to the Commission's 30 December 1970 wage determination and because of the absence of a request for a hearing expressly directed to the Commission's 30 December 1970 wage determination, the $310 average monthly wage became *res judicata*. The hearing officer so ruled and the Commission affirmed.

■ We are unable to agree. The 15 January 1971 request for hearing expressly urged the petitioner's position as to the claimed erroneous computation of the average monthly wage. This request for a hearing was filed after the 30 December 1970 wage determination by the Commission. No one was prejudiced or misled by this state of the record. In Hanen v. Willis, 102 Ariz. 6, 423 P.2d 95 (1967), the Arizona Supreme Court had before it a notice of appeal which, though filed after the filing of the formal written judgment, erroneously purported to appeal from the minute entry order for judgment. In Hanen our Supreme Court stated:

> "The thrust of these decisions is that when adequate notice to appeal has been given to the other party, no mere technical error should prevent the appellate court from reaching the merits of the appeal. Clearly the error in the present case as to the date was merely a technical one, and *no one was misled.*" 102 Ariz. at 9, 423 P.2d at 98. (Emphasis added).

We adopt the same rationale in relation to the request for a hearing on the issue of the average monthly wage in the case now before us and hold that under these circumstances the doctrine of *res judicata*

does not apply to the wage determination and that the correct computation of the average monthly wage is a matter for presentation at the next hearing.

■■ There is an additional ground for our holding in this respect. There is a series of cases by the Arizona Supreme Court and by this Court holding that where the Commission action is required the file must affirmatively reflect that the Commission acted. One of the recent cases is Land v. Industrial Commission of Arizona, 108 Ariz. 278, 496 P.2d 139 (1972), wherein the Supreme Court stated:

> "We reaffirm our holding in *Verdugo* [Verdugo v. Industrial Commission, 15 Ariz.App. 155, 487 P.2d 1] that a 'rubber stamp' award is no evidence that the Commission acted, and the presumption is to the contrary that the Commission has not acted." 108 Ariz. at 279, 496 P. 2d at 140.

While it is true that the wage determination issued by the Commission is not a "rubber stamp" award, it does not bear the signature of any of the Commissioners and there is nothing in the file to disclose that the 30 December wage determination was the action of the Commission as affirmatively required by the hereinbefore quoted A.R.S. § 23–1061, subsec. F.

### SUSPENSION OF BENEFITS

■ Under date of 11 March 1971, notwithstanding the notice of 4 February 1971 which was cancelled on 22 April 1971 and on the same date reinstated for a slightly different reason, the carrier issued its notice of suspension of benefits based upon the alleged failure of the petitioner to keep a medical appointment with a Dr. Courser. This is the only reference we find in the file to Dr. Courser. As hereinbefore noted in the chronology set forth earlier in this opinion the petitioner gave a timely and completely adequate request for a hearing directed to this notice issued by the carrier. At the hearing on 17 May 1971 the petitioner was called as a witness and testified. Neither his counsel nor the

carrier's counsel asked any questions relative to the above-referred to medical appointment. The carrier did not attach to its 11 March 1971 notice a copy of its advice to the petitioner relative to the appointment and offered no evidence on this subject at the hearing, apparently relying on the 11 March notice. The hearing officer entered the following finding:

> "7. No testimony was offered to show the carrier's action suspending benefits per the NOTICE OF CLAIM STATUS of March 11, 1971 was without sufficient cause, therefore said issue is deemed waived.";

which was affirmed by the Commission on review. The statutory basis for a suspension of benefits is found in A.R.S. § 23–1026, subsec. C which reads as follows:

> "C. If the employee refuses to submit to the medical examination or obstructs the examination, his right to compensation shall be suspended until the examination has been made, and no compensation shall be payable during or for such period."

As we pointed out in our recent opinion in Parks v. Industrial Commission of Arizona, 17 Ariz.App. 375, 498 P.2d 187 (filed 13 June 1972), it is not every non-appearance for a medical examination, usually unilaterally scheduled by the carrier, which warrants a suspension of the benefits. The statutory language above quoted makes that clear. The statute envisions the imposition of the penalty or sanction of suspension only where there is some wrongful act on the part of the workman who "refuses" to submit or who "obstructs" a medical examination. While the injured workman has the burden of proof as to his claim, the imposition of this sanction or penalty is in the nature of an affirmative though temporary defense. We hold that where the sanction has been imposed by the carrier and there is a timely request for a hearing, then the carrier has the burden of at least a *prima facie* showing of its right to the privilege of invoking the statutory sanction. While Vazzano v. Superior Court In And For Maricopa County, 74 Ariz. 369, 249 P.2d 837 (1952), has a vastly different factual setting, the basic principle contained therein is very similar to that which supports our rationale in this case. In Vazzano a liquor license had been revoked because of certain wrongful conduct attributed to the licensee. The burden of proof before the liquor superintendent and again on the appeal by the licensee rested with the body seeking to revoke the license. So here we hold that under the circumstances of the instant case the carrier was required to make at least a *prima facie* showing as to its right to invoke the sanction of suspension of benefits as provided for by A.R.S. § 23–1026, subsec. C. Inasmuch as a suspension of benefits involves an attempt to deprive another of a statutorily provided right to compensation, it is our opinion that the ultimate burden of proof should also logically be placed upon the shoulders of the party seeking to have such a penalty imposed.

## REMAND BEFORE OPINION

Prior to the argument of this cause on its merits the carrier made a motion to remand:

> " * * * to the Industrial Commission of Arizona for further administrative processing on the grounds and for the reason that the Awards do not make any findings as to specific benefits to which the Petitioner is entitled, and there is thus, in this cause, no award that defines the benefits Petitioner is entitled to."

We agree that the award leaves much to be desired in the matters pointed out in the motion. The petitioner resisted the motion and we entered our order denying the motion. To have remanded this matter for the purposes specified in the motion would have left unanswered the two important questions which are the basic substance of this opinion. We trust that when this claim is again considered at the next hearing the details as to the dates, the type of disability, the amounts of compensation, and the dates and amounts of the benefits

together with such other matters as are appropriate will be spelled out. As we pointed out earlier in this opinion the new hearing will be a trial *de novo* and nothing is *res judicata* except that the plaintiff sustained a compensable industrial injury.

The award is set aside.

CASE and DONOFRIO, JJ., concur.