531 P.2d 563

Mary GLOVER, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Semcor Division of Components, Respondent Employer,

American Motorists Insurance Company, Respondent Carrier.

No. I CA–IC 1011.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 6, 1975.

Rehearing Denied March 14, 1975.

Review Denied April 22, 1975.

Langerman, Begam, Lewis, Leonard & Marks, P. A. by Noel A. Fidel, Phoenix, for petitioner.

Edward F. Cummerford, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Lewis & Roca by John A. Miller, Mary M. Schroeder and Marty Harper, Phoenix, for respondent employer and respondent carrier.

## OPINION

HAIRE, Chief Judge.

The only issue presented by this review of an award entered by the Industrial Commission is whether the petitioner was entitled to a hearing *de novo* upon remand from this Court. We hold that on the facts here presented, she was so entitled.

The facts underlying this workmen's compensation claim were before this Court in Glover v. Industrial Commission, 17 Ariz.App. 454, 498 P.2d 528 (1972), so we need not delve into them with great detail. When this matter was first before this Court, in setting aside the award of the Commission the Court held that the hearing officer abused his discretion in not granting a continuance so that petitioner could obtain the testimony of a psychiatrist who had examined her some five days before the hearing.

Following remand to the Commission, petitioner's counsel determined that the report by the psychiatrist showed no psychiatric disability attributable to the industrial injury. Notwithstanding this fact, petitioner's counsel requested the issuance of subpoenas for other medical witnesses (not including the psychiatrist) for a hearing which was scheduled before the Commission's hearing officer. At that hearing the petitioner attempted to proceed with the presentation of new evidence not involving the above-mentioned psychiatric is-

sue. The hearing officer refused to allow her an opportunity to present such evidence, stating that he believed that she was not entitled to a hearing *de novo*. The hearing officer's findings in part stated:

"11. That the Court of Appeals set aside the Commission's Award of July 22, 1971, *solely* on a procedural error; the Court's Decision was based upon the Hearing Officer's denial of applicant's request for a further or continued hearing to offer the testimony of a psychiatrist. The Court stated " * * * By reason of the Hearing Officer's abuse of discretion in failing to allow a reasonable continuance relative to the *possible* receipt of the testimony of the examining psychiatrist, it is our opinion substantial justice was not done and the Award of the Hearing Officer as well as the Award of the Commission are hereby set aside." (Emphasis in original).

"12. That when an Award of the Industrial Commission is set aside, the parties are entitled to a hearing de novo. Rutledge v. Industrial Commission of Arizona, 14 Ariz.App. 317, 483 P.2d 58.

"13. That in the instant matter the Court of Appeals did not set aside the Commission's Award on the usual basis, i. e., that said Award was not supported by the evidence. It is this Hearing Officer's opinion that inasmuch as the Award was set aside *solely* on the procedural error that the law pertaining to a hearing de novo is not applicable. The Court held it was error for the Hearing Officer to deny a continuance for the *possible* taking of psychiatric testimony; subsequent to the Court's opinion, a psychiatric report was received and counsel for the applicant stipulated that said report resolved the psychiatric question, i. e., that said report established that the applicant did not have a psychiatric impairment. (Emphasis in original).

"14. That based upon the foregoing, it is this Hearing Officer's conclusion

that the procedural error having been cured, i. e., receipt of and consideration of psychiatric evidence, the parties are not entitled to a hearing de novo."

It is from the award based upon the above-quoted findings that petitioner seeks review, contending that the hearing officer erred in not allowing her to proceed with a complete *de novo* hearing.

 Although we agree with the logic and policy enunciated in the hearing officer's findings, nevertheless we reluctantly conclude that the award must be set aside. While the scope of this Court's power of disposition subsequent to review of civil and criminal appeals is extremely broad,[1] it is for some unapparent reason extremely narrow in workmen's compensation reviews. Under the provisions of A.R.S. § 23–951 we can only affirm the award or set it aside. *See* Magma Copper Co. v. Aldrete, 70 Ariz. 48, 216 P.2d 392 (1950); Matlock v. Industrial Commission, 70 Ariz. 25, 215 P.2d 612 (1950); Kennecott Copper Corporation v. Industrial Commission, 62 Ariz. 516, 158 P.2d 887 (1945). In accordance with this limited power of disposition, the appellate courts of this state have consistently held that upon the setting aside of an award, it is set aside in full and both parties are entitled to a complete hearing *de novo* on all issues which have not previously become final. *See* Rutledge v. Industrial Commission, 108 Ariz. 61, 492 P.2d 1168 (1972); Schnatzmeyer v. Industrial Commission, 78 Ariz. 112, 276 P.2d 534 (1954); Waller v. Howard P. Foley Company, 90 Ariz. 337, 367 P.2d 795 (1961); and Garza v. Industrial Commission, 17 Ariz.App. 525, 498 P.2d 599 (1972).

It is this Court's opinion that the power to modify or affirm in part and remand with directions for limited further proceedings, would result in substantial savings in judicial and Commission adjudicatory effort without in any way detracting from the ultimate goal of affording adequate and just forums for the adjudication and

---

1. As to civil and criminal appeals, see A.R.S. § 12–2103 and §§ 13–1716 and 13–1717; for workmen's compensation reviews, see A.R.S. § 23–951 D.

review of disputes incident to our workmen's compensation system. However, our personal opinion in this regard must give way to the governing statutory provisions, which, as stated above, require that the award be set aside and that petitioner be allowed a complete *de novo* hearing on all issues which have not previously become final.[2]

In arriving at the conclusion that the award must be set aside, we have considered and rejected the respondents' contention that the petitioner was not prepared to proceed with a new hearing, and that therefore we need not even consider the *"de novo"* issue. It is true that petitioner's medical witness was not present at the time set for hearing and that a continuance would probably have been necessary. However, that medical witness had been duly subpoenaed, and in view of his failure to appear a continuance would undoubtedly have been justified. Furthermore, petitioner did have several lay witnesses present for the purpose of giving testimony, and it is clear from the record that the failure to proceed was due to the hearing officer's conclusion that testimony would be limited to the psychiatric issue, rather than to any alleged failure on petitioner's part to have witnesses ready to present evidence. Nor, do we find any basis for estoppel in petitioner's actions in attempting to take advantage of the *de novo* hearing which the law allows. The fault here, as we have stated above, lies in the statutory limitations on this Court's power subsequent to review—limitations which often lead to needless duplication of effort on the part of both the Court and the Commission.

The award is set aside.

EUBANK, J., concurs.

JACOBSON, Presiding Judge (specially concurring):

By this concurring opinion, I do not intend to indicate that I disagree in any manner with the legal conclusions reached by the majority opinion or with the opinion expressed by Chief Judge Haire as that opinion relates to the issue of the limited statutory scope of review by the appellate courts of this state of workmen's compensation awards. Rather this concurring opinion is made for the express purpose of highlighting and emphasizing my agreement with Chief Judge Haire's opinion on this review issue.

The legislature has deemed the appellate courts of this state competent to finally dispose of the life and liberty of its citizens in case of criminal appeals and vast property and civil rights of its citizens in the case of civil appeals. This power has been exercised by the appellate courts in these areas since statehood without any hue and cry from the citizenry. However, for some unfathomed reason, the right of review afforded a judge's opinion, is withheld in the case of a decision of an administrative body—as pointed out in Chief Judge Haire's opinion, the appellate courts of this state may only affirm or set aside an award of the Industrial Commission.

While I am of the opinion that such a distinction is without basis, in the days of uncrowded appellate court dockets, such an inefficient method of review was at least acceptable. Such is not the case today.

As former Chief Judge of this court for the past two years, it has been my unpleasant duty to observe the continued increase of the workload of this court exceed its

---

2. A suggested amendment to A.R.S. § 23–951 which would allow this Court or the Arizona Supreme Court to "AFFIRM, REVERSE OR MODIFY AN AWARD OF THE INDUSTRIAL COMMISSION, AND [render] SUCH JUDGMENT OR AWARD AS THE COMMISSION SHOULD HAVE RENDERED, OR [remand] THE ACTION TO THE COMMISSION WITH DIRECTIONS TO RENDER SUCH AWARD OR [direct] THAT A NEW HEARING BE HELD ON ALL OR ANY SPECIFIC ISSUE, AS JUSTICE MAY REQUIRE. . . ." has been previously presented to a past session of the legislature. See Senate Bill 1316, 31st Legislature, 2nd Regular Session.

output.[3] Such increased filings in this court has necessitated increasing the number of judges of this court to six in 1969 and again to nine in July of 1974. With the necessity of increasing judges and their supportive staff, a corresponding increase in the burden placed on the taxpayers of this state has likewise occurred. It is therefore my considered opinion that any steps taken which would finally put to rest litigation before this court and hence foreclose further appellate review should be given serious legislative consideration.

The case under discussion here is a classic example of this judicial waste. The petitioner originally came before this court contending, among other things, that error was committed by not allowing her the opportunity to present evidence as to her psychiatric condition. This court agreed and had it possessed the same authority it possesses in any other type of appeal it could have remanded the matter back to the Commission for consideration of this limited evidence. In this case such a limited consideration by the Commission would have terminated this litigation for it appears that such psychiatric evidence was either not available or if available was adverse to the petitioner.

However, because of this court's inability by statute to mandate such a result, the petitioner is allowed to re-try those very same issues which were the subject matter of her first review in this court and the cycle of administrative hearing and appellate review is again put in motion. Our traditions of judicial fairplay have been based on the proposition that litigants are entitled to their day in court, but only their day, not years, to the vexation of their opponents by relitigating issues that have previously been put to rest by a determination. Any other rule than this salutory principle results in dilatory tactics; rewards the vexatious; and adds to the already overloaded judicial and administrative systems.

If for no other reason than to allow this court to seasonably consider litigants' problems awaiting decision for the first time, without having to consider prior litigants' problems for the second or third time, I strongly urge the legislature to enact legislation similar to Senate Bill 1316, introduced at the 2nd regular session of the 31st Legislature.

3. In 1965 (the first year of this court's existence) there were 326 cases filed and 231 were disposed of. In 1974 these figures had risen to 929 filings and 647 dispositions.