NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOE JIMENEZ, SR., *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

FRY'S FOOD STORES OF ARIZONA, INC., *Respondent Employer*,

FRY'S FOOD STORES OF ARIZONA C/O SEDGWICK, *Respondent Carrier*.

No. 1 CA-IC 19-0002

FILED: 10-8-2019

Special Action - Industrial Commission
ICA Claim No. 20170-460378
Carrier Claim No. 30177347256-0001
Layna Taylor, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Joe C. Jimenez, Sr., Scottsdale
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Lundmark, Barberich, LaMont & Slavin, P.C., Phoenix
By R. Todd Lundmark and Danielle S. Vukonich
*Counsel for Respondent Employer and Respondent Carrier*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Jennifer M. Perkins joined.

---

**M c M U R D I E**, Judge:

**¶1**        Joe Jimenez, Sr., seeks review of the Industrial Commission of Arizona's (the "Commission") award and decision upon review awarding him benefits for an industrial injury he sustained in February 2017. For the following reasons, we affirm the award.

### FACTS AND PROCEDURAL BACKGROUND[1]

**¶2**        Jimenez worked as a cashier and bagger for Fry's Food Stores of Arizona, Inc. ("Fry's"). On February 11, 2017, Jimenez stepped on a metal pin, which punctured through his right shoe and into his right foot. Jimenez described the metal pin as part of a security tool typically attached to clothing as a theft protection device. A few days later, Dr. Robert Dupuis examined Jimenez and diagnosed his right foot wound as infected, prescribed antibiotics, and recommended work restrictions. Jimenez filed a worker's compensation claim, which Fry's insurance carrier, Sedgwick Claims Management Services, Inc. ("Sedgwick"), denied.

**¶3**        Jimenez timely protested and requested a hearing on the denial of his claim. In May 2017**,** Dr. John Nassar, a board-certified specialist

---

[1]        We view the facts and all inferences to be drawn therefrom in the light most favorable to upholding the Commission's findings and award. *Polanco v. Indus. Comm'n*, 214 Ariz. 489, 490–91, ¶ 2 (App. 2007).

in orthopedic surgery, performed an independent medical examination on Jimenez. After the examination, Dr. Nassar concurred with Dr. Dupuis' diagnosis that the puncture wound had developed an infection but noted that Jimenez's prescribed antibiotics had significantly improved his condition. After studying x-rays of Jimenez's right foot, Dr. Nassar also noted fragmentation and erosion of a bone in the foot that may have been caused by the injury and subsequent infection. Ultimately, Dr. Nassar concluded that the injury, infection, and possible damage to the bone were likely related to his employment at Fry's but believed that Jimenez could return to regular duty without restrictions.

¶4 On June 30, 2017, Sedgwick rescinded its denial of Jimenez's claim and issued a notice of claim status accepting it and issuing temporary partial disability benefits for the time between his injury and Dr. Nassar's evaluation. Jimenez filed a new protest requesting an explanation for the acceptance of his claim and to "discuss what options" he had regarding "preexisting injuries and progressive disability in the course of employment." The protest included an extensive list of Jimenez's past worker's compensation claims. Apparently, Jimenez wanted the hearing to address all worker's compensation claims he had previously filed with the Commission.

¶5 On December 14, 2017, while Jimenez's protest was still pending, Dr. Nassar performed a second independent medical examination on Jimenez. Dr. Nassar opined that the right foot injury was medically stationary, and Jimenez did not require further active medical treatment. Dr. Nassar concluded that a "5% right lower extremity permanent impairment rating for the injury [was] appropriate" and recommended Jimenez receive supportive care for two years, including an allowance for an annual visit with his podiatrist and replacement of orthotics.

¶6 On January 5, 2018, Sedgwick issued three notices of claim status informing Jimenez that, per Dr. Nassar's findings, he was entitled to scheduled permanent partial disability benefits of five percent for his right lower extremity and supportive medical maintenance benefits. The notices also stated that Sedgwick had closed Jimenez's claim. On January 31, 2018, the Administrative Law Judge ("ALJ") held the first of three hearings on the June 2017 and January 2018 notices. Although he repeatedly attempted to turn the focus of the proceedings to his past injuries and worker's compensation claims, Jimenez eventually raised two arguments concerning the June 2017 and January 2018 notices.

¶7          First, Jimenez argued he should have received temporary partial disability benefits after May 25, 2017, because he did not return to work until July 2017. Second, Jimenez argued the permanent impairment rating and resulting benefits he received in the January 2018 notices should have been higher and that he still required active medical treatment for his right foot. Jimenez testified concerning the extent of his injuries and the treatment he had received following his right foot injury. Jimenez also testified that the doctor he had seen for a second opinion after Dr. Nassar's examination had not released him for work until July 2, 2017. Jimenez then requested a podiatrist, Dr. Katherine Kennedy, be subpoenaed to testify on his behalf.

¶8          The ALJ held the second and third hearings in May 2018. In the second hearing, Dr. Kennedy testified that she examined Jimenez in January and February 2018, diagnosed Jimenez with pain and bone damage in his right foot, and recommended he see a pain management specialist to discuss long-term pain management. Dr. Kennedy testified that she was unfamiliar with the relevant guidelines for evaluating permanent impairments, and that she agreed with the last independent medical examiner's finding that the right foot injury had "plateaued." In the third hearing, Dr. Nassar testified on behalf of Sedgwick. Dr. Nassar reaffirmed the findings and conclusions of his evaluations, including his belief that Jimenez could have returned to work without restriction on May 25, 2017. When questioned about the permanent impairment rating he had assigned to Jimenez's injury, Dr. Nassar testified that he had based his opinion on the imaging of Jimenez's foot and the American Medical Association's Guides to the Evaluation of Permanent Impairment. Throughout both hearings, Jimenez consistently attempted to question both Dr. Kennedy and Dr. Nassar about previous injuries he had sustained and to assert, without support from either witness's testimony, that his past and present injuries were connected.

¶9          In July 2018, the ALJ issued her decision. After summarizing the evidence presented at the hearings, the ALJ resolved any conflict in the medical evidence in favor of the opinions of Dr. Nassar. The ALJ then found that Jimenez's injury was medically stationary with a five percent permanent disability in the right lower extremity, and the supportive care recommended by Dr. Nassar was appropriate. Because Dr. Nassar had concluded Jimenez was able to work without restrictions on May 25, 2017, the ALJ found that Jimenez was not entitled to temporary partial disability benefits beyond what he had already been paid, but that he was entitled to medical benefits from February to December 2017. However, because Jimenez's records showed he had previously been awarded scheduled

permanent disability benefits for a prior injury, the ALJ found that Jimenez's permanent partial disability benefits would have to be treated as unscheduled. *See Ronquillo v. Indus. Comm'n*, 107 Ariz. 542, 543–44 (1973). The decision was affirmed upon review.

**¶10** Jimenez timely petitioned for special action review, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

**¶11** At the outset, we note Jimenez's opening brief raises numerous issues outside the scope of our review, including: (1) a series of prior worker's compensation claims; (2) a request for a compromise settlement agreement between Fry's and his union for unfair wage practices; and (3) a claim that an ALJ in a recent hearing on a separate worker's compensation claim inappropriately obstructed his cross-examination of a witness.[2] *See* A.R.S. § 23-951(D) (when reviewing an award of the Commission, "[t]he court of appeals shall enter judgment either affirming or setting aside the award, order or decision"); *Glover v. Indus. Comm'n*, 23 Ariz. App. 187, 188 (1975) (in reviewing worker's compensation claim, the court of appeals may "only affirm the award or set it aside"). Indeed, from what we can discern of Jimenez's opening brief, he does not appear to dispute any aspect of the ALJ's decision, other than to broadly request an award of $3,000,000. We could dismiss Jimenez's appeal for this reason. *See Adams v. Valley Nat. Bank*, 139 Ariz. 340, 342 (App. 1984) (a deficient brief may result in the dismissal of an appeal). However, in the exercise of our discretion, we will review the ALJ's decision to determine whether it was reasonably supported by the evidence. *See Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

**¶12** In reviewing a worker's compensation award, we defer to the ALJ's factual findings but review questions of law *de novo*. *Young v. Indus.*

---

[2] Jimenez also attached an appendix to his opening brief containing a mix of pictures, medical reports, caselaw, and documents relating to both this claim and other past and ongoing worker's compensation claims. To the extent this appendix contains materials outside the scope of our review or not presented to the Commission, we do not consider it. *See Magma Copper Co. v. Indus. Comm'n*, 139 Ariz. 38, 47 (1983) ("[T]he time for presentation of evidence is at the hearing before the Commission.").

*Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). The burden is on the injured employee to establish each element of a claim. *Yates v. Indus. Comm'n*, 116 Ariz. 125, 127 (App. 1977). When an injury would not be apparent to a layperson, expert medical testimony is required to establish "not only the causal connection between a claimant's medical condition and the industrial accident, but also the existence and extent of any permanent impairment." *Gutierrez v. Indus. Comm'n*, 226 Ariz. 1, 3, ¶ 5 (App. 2010), *aff'd in part*, 226 Ariz. 395 (2011). When a conflict in medical expert testimony arises, it is the responsibility of the ALJ to resolve it, and we will not disturb that resolution unless it is "wholly unreasonable." *Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 19 (1985). Viewing the evidence in the light most favorable to sustaining an award, we will affirm the ALJ's decision unless there is no reasonable basis for it. *Lovitch*, 202 Ariz. at 105, ¶ 16.

¶13        Reasonable evidence in the record, as detailed above, supports the ALJ findings and award. Both Dr. Kennedy and Dr. Nassar agreed that an infection, likely caused by the puncture wound from the metal pin, damaged a bone in Jimenez's right foot, but the injury required no further active medical treatment. Neither expert offered any testimony in support of Jimenez's speculative theory that his right foot injury was connected to other past injuries. Moreover, to the extent there was any conflict in the medical evidence between Dr. Kennedy's and Dr. Nassar's testimony, the ALJ resolved it in favor of the opinions of Dr. Nassar.

¶14        Finally, we address the ALJ's findings concerning Jimenez's temporary partial disability and permanent disability benefits claims. After the first hearing, Jimenez did offer into evidence a doctor's note that purported to release him from work until July 2017. However, the burden is on the worker seeking temporary partial disability benefits to prove an inability to perform the worker's regular work, and the ALJ, as the trier of fact, was well within her discretion to find Dr. Nassar's testimony concerning Jimenez's ability to work more credible. *State Compensation Fund v. Ferrell*, 16 Ariz. App. 139, 142 (1971). As for Jimenez's claim that he was entitled to greater permanent disability benefits, he offered no evidence to challenge Dr. Nassar's permanent impairment rating, which was based on the American Medical Association's Guides to the Evaluation of Permanent Impairment. *See* Ariz. Admin. Code R20-5-113(B)(1) ("The physician should rate the percentage of impairment using the standards for evaluation . . . published by the American Medical Association in Guides to the Evaluation of Permanent Impairment . . . ."). And the ALJ correctly concluded that, pursuant to *Ronquillo*, Jimenez's right foot injury must be

treated as an unscheduled disability. 107 Ariz. at 543–44. Accordingly, we find no error in the ALJ's decision.

## CONCLUSION

¶15      For the foregoing reasons, we affirm the Commission's award.



AMY M. WOOD • Clerk of the Court
FILED:      RB