798 P.2d 403

**Edgar Garrett HUGHES, Plaintiff/Appellee, Cross–Appellant,**

v.

**Majel Margaret CREIGHTON, Defendant/Appellant, Cross–Appellee.**

**No. 2 CA–CV 89–0216.**

Court of Appeals of Arizona, Division 2, Department A.

April 12, 1990.

Review Denied Oct. 9, 1990.

Cromwell, Pratte, Ameln & U'Ren by Deborah Pratte and Stephen U'Ren, Tucson, for plaintiff/appellee, cross-appellant.

Jack J. Rappeport, for defendant/appellant, cross-appellee.

## OPINION

ROLL, Judge.

Defendant Majel Margaret Creighton appeals from the judgment awarding visitation rights to Edgar Garrett Hughes. Hughes cross-appeals the court's refusal to conduct child support hearings. Because Hughes is not a parent of the child and fails to meet any of the other statutory grounds for visitation, we reverse the trial court's award of visitation. We affirm the trial court's refusal to consider child support.

## FACTS

While Hughes and Creighton were dating, Creighton became pregnant and informed Hughes that he was the father. They attended birthing classes together and Hughes signed the child's birth certificate, acknowledging that he was the father.

Creighton lived with her mother for three and one-half months following the child's birth, and Hughes visited the child daily. Hughes and Creighton then lived together as husband and wife, but did not marry. Hughes and the child developed a close father-son relationship and Hughes provided financial support. After sixteen months, Creighton moved, took the child with her, and declared that Hughes was not the father of the child. Hughes immediately filed a paternity action.

## PROCEDURAL HISTORY

Hughes filed a Special Paternity Action under A.R.S. § 12–841 et seq., alleging that he was the child's natural father and requesting that visitation rights be determined. The parties stipulated to temporary visitation between Hughes and the child pending the outcome of the court proceedings. Court-ordered blood tests established that Hughes is not the child's natural father. Following hearings, the trial court determined that Hughes was *in locos parentis* to the child and that visitation was in the best interest of the child. Creighton appeals from this judgment. The trial court also found that it did not have jurisdiction to order Hughes to pay child support. Hughes appeals from this judgment.

## ISSUES ON APPEAL

Creighton argues that once the trial court determined that Hughes was not the biological father of the child, it lacked jurisdiction to award visitation rights to Hughes. Hughes cross-appeals, arguing

that the trial court has jurisdiction to order him to pay child support.

### Standard of Review

Subject matter jurisdiction is a conclusion of law and is therefore reviewed *de novo. Tovrea Land & Cattle Co. v. Linsenmeyer,* 100 Ariz. 107, 114, 412 P.2d 47, 51 (1966).

### Jurisdiction Over Visitation Rights

Creighton argues that the trial court lacked jurisdiction to award visitation rights, citing under A.R.S. § 25–331 and *Bryan v. Bryan,* 132 Ariz. 353, 645 P.2d 1267 (App.1982).

The action was filed as a special paternity action under A.R.S. § 12–843.[1] A.R.S. § 12–843 states in part:

A. Proceedings to establish the ... paternity of a child ... under this article may be commenced by any of the following:

*    *    *    *    *    *

2. The father.

B. Any party to a proceeding under this article may request that specific visitation be determined as part of the proceeding. The court may award visitation as provided in § 25–337 after a hearing.

Hughes sought determination of paternity and requested that visitation rights be awarded. The uncontroverted evidence is that Hughes is not the biological father of the child. Hughes maintains that even though the issue of paternity was resolved against him, the trial court could nevertheless proceed to award visitation.

■ When § 12–843 was amended in 1985 to permit the alleged father to file a paternity action, the legislature stated that the purpose of the amendment was to prescribe standards for the award of visitation, prescribe persons who may file maternity and paternity complaints, provide for

child support determination and provide for the filing of a custody petition, for a child born out of wedlock, after a paternity action.[2] The legislature also amended § 25–331, the jurisdictional section of the child custody statute by adding subsection C:

B. A child custody proceeding is commenced in the superior court:

1. By a parent, by filing a petition for either of the following:

(a) Dissolution or legal separation.

(b) Custody of the child in the county in which the child is permanently resident or found.

2. By a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents.

C. The provisions of subsection B, paragraph 1, subdivision (b) of this section do not apply if a child is born out of wedlock and there has not been a prior adjudication of maternity or paternity.

These two amendments permit an alleged father a forum to prove he is a natural father in order to allow the superior court jurisdiction to determine his fundamental right to custody and visitation. When these two statutes are read together, an alleged father can seek custody or visitation after paternity is determined. However, if the alleged father is unable to prove paternity, he is not entitled to proceed to seek custody or visitation. A.R.S. § 25–337 standards prohibit such an award.

Under § 12–843, the court may award visitation as provided in A.R.S. § 25–337, a statute dealing with rights of noncustodial parents. A.R.S. § 25–337 states in part:

A parent not granted custody is entitled to reasonable visitation rights to ensure that the minor child has frequent

---

1. A.R.S. § 12–843 was amended in 1985 to allow an alleged father to file a paternity action and to allow adjudication of visitation rights in the same proceeding. Prior to that amendment, visitation rights could be granted only in a jurisdictionally sound custody proceeding. *Bryan,* 132 Ariz. at 355, 645 P.2d at 1269. The alleged

father had to establish paternity under the Declaratory Judgments Act, then proceed under A.R.S. § 25–337, the child custody statute. *Thornsberry v. Superior Court,* 146 Ariz. 517, 707 P.2d 315 (1985).

2. 1985 Ariz.Sess.Laws Ch. 140.

and continuing contact with the noncustodial parent unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health.

The authority of the court to grant visitation rights to Hughes hinges on the definition of parent. If Hughes is not a parent, then the court exceeded its jurisdiction by awarding visitation rights. *See Marshall v. Superior Court*, 145 Ariz. 309, 701 P.2d 567 (1985) (although court initially had jurisdiction, it exceeded its jurisdiction by granting custody to grandmother, a nonparent, who had no standing).

A.R.S. § 25–337 fails to define the term "parent." When the legislature leaves words undefined, they shall be construed according to the common and approved use of the language unless the words have acquired a peculiar and appropriate meaning in the law. A.R.S. § 1–213. In addition, statutory provisions are read and construed in context with related provisions and the statutory scheme. *Grand v. Board of Regents*, 133 Ariz. 527, 529, 652 P.2d 1374, 1376 (1982). The goal is to achieve consistency among the related statutes. *State v. Wilhite*, 160 Ariz. 228, 330, 772 P.2d 582, 584 (App.1989).

A common usage of the term parent is one who begets offspring. *Id.* The adoption process terminates parental rights of a biological parent and confers these rights on the adoptive parent. *See* A.R.S. § 8–117. This provides a special legal meaning for the term parent.

Child custody statutes have two purposes; first to protect the fundamental rights of a parent to the control and custody of their children, *In re Marriage of Herreras*, 159 Ariz. 511, 768 P.2d 673 (App. 1989), and second to protect the best interest of the child. A.R.S. § 25–332. A careful reading of § 25–337 indicates that when an initial visitation decision is made, the focus is on the parents' fundamental rights. A noncustodial parent is entitled to visitation unless such visitation seriously endangers the child. Only upon modification of an order is the best interest of the child standard considered. Hughes is not

the biological father of the child and of course has not adopted him. Hughes and Creighton chose not to marry. Although Hughes relies upon *Bryan* as support for his position, *Bryan* is inapplicable. *Bryan* was a marital dissolution action which discussed a stepparent's right to visitation. This action involves a paternity action and deals with visitation rights of a nonparent.

In the absence of a statute, a custodial parent holds veto power over visitation rights of anyone except the other parent. *See* 67A C.J.S. *Parent and Child* § 41(C) (1978); 59 Am.Jur.2d *Parent and Child* § 36 (1987); *In re Marriage of Freel*, 448 N.W.2d 26, 28 (Iowa 1989); *but see Bryan v. Bryan, supra* ("In matters of child custody it is the welfare of the child, not the gratification of the parent, that is paramount.") The legislature has specifically extended visitation rights to noncustodial parents, grandparents, and great grandparents. A.R.S. § 25–337.01. Conspicuously absent from the statutes is a provision authorizing other persons to obtain visitation rights.

Hughes relies on *Temple v. Meyer*, 208 Conn. 404, 544 A.2d 629 (1988), which is factually similar to the matter before us in all but one critical aspect. The Connecticut statute specifically allows the court to award visitation to any person. *Id.* at 408, 544 A.2d at 631.

In Arizona, noncustodial parents are entitled to visitation rights. Grandparents, great grandparents, and stepparents are permitted visitation. Hughes does not fit any of these categories, even though he stood *in locos parentis* to the child.

*Jurisdiction to Award Child Support*

Hughes argues that the court had jurisdiction to order him to pay child support since the court found Hughes to be the psychological parent or *in locos parentis*. A.R.S. § 12–849(C) authorizes the court to order either or both parents to pay child support as part of the paternity proceedings. The court's authority, however, extends only to natural or adoptive parents. *Anonymous v. Anonymous*, 153 Ariz. 573, 576, 739 P.2d 794, 797 (1987).

Only natural and adoptive parents are legally obligated to financially support their children. *Id.;* A.R.S. § 12–2451(A). Since Hughes has no legal obligation to support the child, the court cannot order him to do so. Accordingly, we affirm the trial court's finding that the court lacked jurisdiction to order child support payments.

### Attorneys' Fees

Creighton requests attorneys' fees pursuant to A.R.S. § 12–849(E) and Rule 21(c), Ariz.R.Civ.App.P. Adequate evidence was presented at trial to determine the financial resources of both parties. Accordingly, Creighton is awarded fees incurred in this appeal.

HOWARD and HATHAWAY, JJ., concur.