No. 68,311

*In re* SENATOR J. CHRISTOPHER HOOD, A Minor,
d.o.b. December 26, 1987.

(847 P.2d 1300)

Opinion filed March 5, 1993.

*Juanita M. Carlson*, of Lawrence, argued the cause and was on the brief for appellant.

*Brian J. Shultz*, of Lawrence, argued the cause, and *Scott C. Rask*, of Lawrence, was with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a family law first-impression case concerning a claim of visitation rights by an unrelated third party. Dianne Hofmann appeals the dismissal of her petition to allow visitation with a four-year-old minor, Senator J. Christopher Hood. Dianne asserts standing under the grandparent visitation statute, K.S.A. 38-129. She also advocates the creation of a common-law right of visitation for third parties when two conditions are met: (1) Visitation is in the child's best interests, and (2) there has been a substantial relationship between the child and the third party seeking visitation. Dianne is not related to Christopher by blood or marriage. She is not a grandparent. She was Christopher's day care provider. Dianne seeks a court order enforcing visitation with Christopher against the wishes of Christopher's mother. The trial court granted the mother's motion to dismiss.

Our jurisdiction is under K.S.A. 20-3018(c) (transfer from the Court of Appeals upon our own motion).

Our scope of review limits the area we may question when a motion to dismiss has been granted. See *Blevins v. Board of Douglas County Comm'rs,* 251 Kan. 374, 381, 834 P.2d 1344 (1992). In the case at bar, we look to the well-pleaded facts of Dianne's petition. We assume that (1) visitation with Dianne would be in Christopher's best interests and (2) a substantial relationship exists between Christopher and Dianne.

Our standard of review, *i.e.,* the legal scale we use in weighing the sufficiency of her claim, is unlimited when we are reviewing a conclusion of law. *U.S.D. No. 352 v. NEA-Goodland,* 246 Kan. 137, 140, 785 P.2d 993 (1990). (We note that neither party complied with Supreme Court Rules 6.02 or 6.03 [1992 Kan. Ct. R. Annot. 25, 26], concerning citation to the record in briefs.)

We find no error and affirm.

## Dianne's Contentions

K.S.A. 38-129 provides:

"(a) The district court may grant the grandparents of an unmarried minor child reasonable visitation rights to the child during the child's minority upon a finding that the visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established."

Dianne alleges: (1) Christopher is an unmarried minor; (2) visitation with Dianne would be in Christopher's best interests; (3) there is a substantial relationship between Christopher and Dianne; (4) the "grandparent like" relationship is based on the fact that Christopher is a half brother to Dianne's grandson, Johnnie (Rhonda, Christopher's mother, is also Johnnie's mother. Dianne's son, who is Johnnie's father, was once married to Rhonda). In the alternative, Dianne alleges that the action is an original one based on a common-law right of visitation between a minor and a third party. She argues that this common-law right is supported by statutes and case law from other states and on the fact that in Kansas, interested third parties are notified of a child in need of care (CINC) action.

Rhonda's motion to dismiss asserted (1) Dianne is not a grandparent and (2) Dianne has conceded that Kansas does not rec-

ognize a common-law third-party visitation right. The trial court was unwilling to either extend the term "grandparent" in K.S.A. 38-129 to include "grandparent like" or to recognize a common-law right of visitation.

## Creation of a Common-Law Right

Dianne asserts that other jurisdictions have allowed third-party visitation with minor children. Specifically, she argues that grandparents have been allowed to assert an independent visitation claim. She relies on *Roberts v. Ward*, 126 N.H. 388, 493 A.2d 478 (1985). In *Ward*, the New Hampshire Supreme Court reasoned that the legislature authorized grandparent visitation rights in marital dissolution cases involving the traditional two-parent family; consequently, it made little sense not to recognize a similar right in a nontraditional family. The *Ward* court used its *parens patriae* power to decide whether visitation with grandparents, to whom close personal attachments had been made, would be in the best interests of the child. 126 N.H. at 391-93. *Ward* cannot be read as a justification for the invocation of our *parens patriae* power to grant relief to Dianne, who is not a grandparent. Dianne has not cited any case factually similar to the case at bar that supports her claim. Our independent research has failed to locate such a case.

As one author explained:

"Courts can only assert themselves if a parent:
  asks for determination of paternity;
  wants to end the marriage;
  dies; or
  has abused, neglected, or endangered the child.
  "There is no mechanism for a third party to intervene in the relationships of an intact family that has not subjected itself to judicial intervention or failed society's minimal requirements for adequate parenting." Morris, *Grandparents, Uncles, Aunts, Cousins, Friends: How is the court to decide which relationships will continue?*, 12 Family Advocate 11 (Fall 1989).

Dianne next argues that stepparent case law from other jurisdictions advances her contentions in support of visitation. Dianne's argument erodes her claim. K.S.A. 1992 Supp. 60-1616(b) gives a trial court discretion to grant stepparents, as well as grandparents, visitation rights in connection with a divorce action. The cases cited by Dianne all deal with a situation in

which a stepparent sought visitation in connection with either a divorce or the death of a biological parent. In fact, in *Collins v. Gilbreath*, 403 N.E.2d 921 (Ind. App. 1980), the court limited its holding: "Nor do we intend to open the door and permit the granting of visitation rights to a myriad of unrelated third persons, including grandparents, who happen to feel affection for a child." 403 N.E.2d at 923-24.

Dianne concludes by asserting that a decisional trend is developing which allows some form of third-party visitation. According to Dianne, we should follow the trend. We decline the invitation to judicially create a right of unrelated third-party visitation. The Kansas Legislature has granted visitation rights to grandparents and stepparents but has not spoken with regard to other unrelated third parties. K.S.A. 38-129 does not grant standing to an unrelated third party who claims to be "grandparent like."

Dianne observes that Kansas allows nonparents a right to be considered for placement in a CINC proceeding (K.S.A. 1992 Supp. 38-1563[d][1]). She asserts that the CINC proceeding is significant because it: (1) allows a nonrelative to be considered for custody placement; (2) cites the best interests of the child standard for nonrelative placements; and (3) uses the phrase "close emotional tie," which is nearly the same as "substantial relationship." Dianne believes that the statutory elements involved in a CINC action can be extended to the case at bar. We do not agree. CINC proceedings are not relevant. K.S.A. 1992 Supp. 38-1563(d)(1) only applies in situations where the child is at risk of being harmed. A CINC action is a civil action brought by the State to make certain a child is placed in a stable home environment. The case at bar does not involve a child in need of care.

Parents have a constitutionally protected right to determine how their children will be raised. See *Santosky v. Kramer*, 455 U. S. 745, 753, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982). Rhonda clearly has the right to determine how Christopher will be raised, absent justified state intrusion. The legislature must decide if and when intrusion into the protected family unit, in the form of third party visitation, is justified by a legitimate state interest. "There are no inherent rights of third parties to have custody or guard-

ianship of a child." Victor, *When Third Parties Come First—Asserting the Custodial Rights of Nonparents,* 12 Family Advocate 8, 9 (Fall 1989). A similar analysis applies in the visitation context.

We recognize that there are policy and value rationales which support a third-party visitation claim. The nature of the family structure in this country has evolved significantly during the past 50 years. Statistics which signal a change in the family structure have been noted.

"This phenomenon about who we were—the intact nuclear family during the first seven decades of this century—and what we have become in the last two decades—the 'blended family'—is a subject of everyday life which now faces virtually every American. We are either stepchildren, stepsiblings, stepmothers, stepfathers, stepgrandparents, or friends, relatives, or fellow employees of someone who is part of a blended family. There is no escaping the twenty-first century family. 'We. . . all have to work toward changing our internal maps of what a family should be.' " Buser, *Introduction: The First Generation of Stepchildren,* 25 Fam. L. Q. 1, 2 (1991).

The evolving nature of the parental unit in our society acknowledges that an unrelated third party may act as the child's psychological parent. The realities of modern life mean that individuals like Dianne may end up caring for a child for weeks, months, or even years, and then have the natural parents take the child back and, for whatever reason, abruptly end a relationship that is important to the child. It could be the only stable relationship the child has known. However, even if the importance of furthering the relationship is conceded, we must consider whether it is for this court or for the legislature to establish an unrelated third-party visitation right.

Additional policy implications may weigh against the creation of such a right. If a day care provider can be granted visitation rights, then other parties, such as friends of parents, may also file visitation petitions. Consequently, recognition of the right arguably could result in an increase in the intrusion by courts into family life. In fact, an unrelated third party could abuse the procedure, using the court system to harass parents. The lack of family connection as a limitation on standing could invite increased litigation in the family law area.

We have considered all of the other contentions advanced by Dianne and conclude that they are without merit. We will not

create a new common-law right of third-party visitation. The legislature is the forum to entertain sociological and policy considerations bearing on the well-being of children in our state. Any expansion of visitation rights to unrelated third parties ought to originate with the legislature.

Affirmed.