868 P.2d 1000

**Darla FINCK, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable Thomas W. O'Toole, a judge thereof, Respondent,**

**Michael E. FINCK and Christopher M. Finck, Minor Child of the Petitioner, By and Through His Court–Appointed Counsel, John P. Moore, Esq., Real Parties in Interest.**

**No. 1 CA–SA 93–0095.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 7, 1993.

Review Granted Feb. 15, 1994.

Mallin & Brown by Robert H. Mallin, Frederic G. Lemberg, P.C. by Frederic G. Lemberg, Phoenix, for petitioner.

John P. Moore, Phoenix, for respondent Minor Child.

Michael E. Finck, in pro. per.

OPINION

NOYES, Judge.

The question presented is whether, in a domestic relations action, the superior court has jurisdiction to award visitation to step-grandparents who stand *in loco parentis* to the child. The trial court awarded temporary visitation to paternal step-grandparents; the child's mother filed a petition for special action. We accepted jurisdiction and granted relief, concluding that the trial court exceeded its jurisdiction. We issued an order vacating the visitation award, with this opinion to follow.

I.

A.

We have jurisdiction pursuant to Rules of Procedure for Special Actions 1(a) and (4) and Ariz.Rev.Stat.Ann. (A.R.S.) section 12–120.21(A) (1992). We accept jurisdiction because Petitioner has no equally plain, speedy and adequate remedy by appeal,[1] because the question presented is one of pure law, and because there are conflicting court of appeals opinions on the question. *Compare Bryan v. Bryan*, 132 Ariz. 353, 359, 645 P.2d 1267, 1273 (App.1982) (trial court does have jurisdiction to award visitation to a stepparent) *with Olvera v. Superior Ct.*, 168 Ariz. 556, 557, 815 P.2d 925, 926 (App.1991) (trial court does not have jurisdiction to award custody [or visitation] to a stepparent); *see also Hughes v. Creighton*, 165 Ariz. 265, 268, 798 P.2d 403, 406 (App.1990) (trial court does not have jurisdiction to award visitation to an *in loco parentis* boyfriend).

B.

The child in question is the son of Petitioner Darla Finck (Darla). The child was born in September 1986, two months before Darla married Real Party in Interest Michael Finck (Michael). Michael believed he was the child's father, and he held this belief until 1992, when Darla filed a Petition for Dissolu-

1. *See Bechtel v. Rose*, 150 Ariz. 68, 71, 722 P.2d 236, 239 (1986) (" 'When the urgent and agonizing nature of the numerous proceedings affecting custody is taken into consideration, with the resulting detriment to the [child] involved, it is apparent that the ultimate remedy available to petitioner by way of appeal is neither plain, speedy, nor adequate.' ") (quoting *Silver v. Rose*, 135 Ariz. 339, 343, 661 P.2d 189, 193 (App. 1982)).

tion of Marriage Without Children and claimed that Michael was not the father. Court-ordered blood tests later excluded Michael as the father, and that fact is now admitted by all parties.

Michael has been incarcerated from time to time since 1983 and has been in prison continuously since March 1992 for legal problems apparently unrelated to the marriage. He has been defaulted in this dissolution action. The visitation contest here is between Darla and Michael's parents (the Fincks). Although the Fincks are not parties to the dissolution action, and the child is not common to the parties of the marriage being dissolved, the Fincks' claims to the child have consumed considerable time and resources of the domestic relations court.

The child was living with the Fincks when Darla filed for dissolution of the marriage. Darla wanted the child back, but the Fincks held onto him until they had been subjected to *habeas corpus* proceedings followed by the threat of contempt proceedings. Once the child was brought to court, the court awarded temporary custody to Darla, appointed an attorney for the child, ordered paternity testing, ordered a custody study from Conciliation Services, and ordered a visitation study from Expedited Visitation Services.

The Expedited Visitation Services report and recommendation, which was approved and adopted by the court, found that Darla and Michael had lived with the Fincks from 1983 until 1988, at which time she was asked to leave for alleged drug use and other problems. Darla had the child with her from 1988 until May 1991. She and the child lived with Michael from May to October 1991 in a home purchased for them by the Fincks. In October 1991, Darla moved out again, leaving the child with Michael. Michael and the child eventually moved back in with the Fincks. At some point thereafter Michael became incarcerated again. The Fincks acted *in loco parentis* for the child until April 1992, when the court awarded temporary custody of the child to Darla.

The authors of the visitation report made the following recommendation, which became the trial court's interim visitation order of April 23, 1992:

Based on the child's interaction in the waiting room and information presented during the conference, it appears the child has a deep bond with the paternal grandparents. Consequently, a transition period appears appropriate. Therefore, [it is ordered:]

The child will remain with the paternal grandparents in the evenings. Mother will pick up the child every morning at 7:00 a.m. and return child to the grandparents at 5:00 p.m. Due to Mother's work schedule, Mother will return the child at 3:00 p.m. on Thursday and Friday.

After a review conference on April 29, 1992, the visitation report authors advised the court that the parties agreed to modify the order to provide, basically, alternating weekend visitation for the Fincks. This modification was approved and ordered by the court and, apparently, visitation pursuant to that modified order proceeded without incident for some months.

In August 1992, the child's attorney filed a Motion for Hearing on Issues of Custody and Visitation because Michael had been defaulted and the child's attorney wanted to preserve those issues for hearing. Darla's response included the recently-learned fact that blood tests excluded Michael as the father; Darla now claimed that the trial court was without jurisdiction to award visitation to the Fincks. In reply, the child's attorney cited *Bryan* for the proposition that the trial court did have jurisdiction to award visitation to the Fincks. After a hearing in December 1992, the trial court found jurisdiction based on *Bryan*, distinguished *Olvera* on grounds that it was a custody case, and affirmed the award of temporary visitation to the Fincks.

## II.

### A.

■ *Bryan* is an opinion from Division Two of this Court with which we expressed disagreement in *Olvera*. *See* 168 Ariz. at 558, 815 P.2d at 927. We continue to disagree with *Bryan* for the reasons stated in *Olvera* and also for those expressed in *Hughes*, 165 Ariz. at 268, 798 P.2d at 406, a

more recent case from Division Two. Hughes, like Michael in this case, believed he was the child's father until he and the mother had a falling out and he learned that he was not the father. *See Hughes,* 165 Ariz. at 266, 798 P.2d at 404. Hughes was not married to the child's mother, but he had a strong bond with the child. *Id.* He brought a paternity action to establish his visitation rights and child support obligation. *Id.* The trial court awarded Hughes visitation, but found no jurisdiction to order child support. *Id.*

The court of appeals reversed the visitation award, finding that visitation in a paternity action could only be awarded to a "parent" as that term is used in A.R.S. section 25–337(A) (visitation rights of noncustodial parent) and that Hughes was not a "parent" even though he had served *in loco parentis.* *See id.* at 267–68, 798 P.2d at 405–06. We agree with this reasoning and see no reason why it does not apply to both stepparents, as in the *Bryan* case, and to other nonparents. *Hughes* distinguished *Bryan* on grounds that "*Bryan* was a marital dissolution action which discussed a stepparent's right to visitation. This action [*Hughes*] involves a paternity action and deals with visitation rights of a nonparent." *Id.* at 268, 798 P.2d at 406. We respectfully suggest that there is no real distinction between the two cases. The stepparent in *Bryan* is a nonparent and so is the boyfriend in *Hughes;* visitation in the *Bryan* dissolution action is governed by the same statutes as visitation in the *Hughes* paternity action.

Even if we could reconcile *Hughes* and *Bryan,* we still have the clear conflict between *Olvera* and *Bryan.* The nonparent in *Olvera* was a stepmother who claimed to have been the child's primary caretaker for several years. *See* 168 Ariz. at 557, 815 P.2d at 926. In reversing the trial court's award of temporary custody to the stepmother, *Olvera* held that "[t]he definition of 'parent' does not include a stepparent in domestic relations cases." 168 Ariz. at 558, 815 P.2d at 927. *Bryan,* on the other hand, affirmed the award of temporary visitation to a stepfather, holding that "the court below did not err in considering the appellee [stepparent] as a candidate for visitation rights." 132 Ariz. at 359, 645 P.2d at 1273. As we discuss below, it is immaterial that *Bryan* involved visitation and *Olvera* involved custody; the source of jurisdiction is the same. These two cases cannot be reconciled. We follow *Olvera.*

### B.

■ Before granting visitation rights, a trial court must have jurisdiction over the child and over the parties. *Bryan* correctly noted that "[v]isitation rights, whether viewed as a limited form of custody or as a limitation upon the custody rights of another, may be granted only in a jurisdictionally sound custody proceeding." 132 Ariz. at 355, 645 P.2d at 1269.

The source of trial court jurisdiction in custody or visitation cases is A.R.S. section 25–331 (1991). *See Olvera,* 168 Ariz. at 557–58, 815 P.2d at 926–27 (custody case); *Bryan,* 132 Ariz. at 355, 645 P.2d at 1269 (visitation case). The statute provides, in pertinent part:

B. A child custody proceeding is commenced in the superior court:

1. *By a parent,* by filing a petition for either of the following:

(a) Dissolution or legal separation.

(b) Custody of the child in the county in which the child is permanently resident or found.

2. *By a person other than a parent,* by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents.

A.R.S. section 25–331(B) (1991) (emphasis added).

■ The rights conferred by the legislature on a "person other than a parent" for custody or visitation are inapplicable in this case for two reasons: 1) the step-grandparents did not file a petition for custody before the child was returned to the physical custody of his mother, and 2) the issue arises in an action for dissolution of marriage. Therefore, the step-grandparents in this case are entitled to visitation only if one or both are "parents" within the meaning of the domestic relations statutes.

The statute governing visitation rights of parents, A.R.S. section 25–337 (Supp.1992), provides: "A parent not granted custody of the child is entitled to reasonable visitation rights to ensure that the minor child has frequent and continuing contact with the noncustodial parent...."[2] Although neither the custody nor the visitation statute defines the word "parent," as noted in *Hughes*:

> When the legislature leaves words undefined, they shall be construed according to the common and approved use of the language unless the words have acquired a peculiar and appropriate meaning in the law. A.R.S. § 1–213. In addition, statutory provisions are read and construed in context with related provisions and the statutory scheme. *Grand v. Board of Regents*, 133 Ariz. 527, 529, 652 P.2d 1374, 1376 (1982). The goal is to achieve consistency among the related statutes. *State v. Wilhite*, 160 Ariz. 228, 230, 772 P.2d 582, 584 (App.1989).
>
> A common usage of the term parent is one who begets offspring. *Id.* The adoptive process terminates parental rights and confers these rights on the adoptive parents. *See* A.R.S. § 8–117. This provides a special legal meaning for the term parent.

165 Ariz. at 268, 798 P.2d at 406.

■ A "parent" in the domestic relations statutes is a biological or adoptive parent. A person standing *in loco parentis* to a child is, by definition, not the child's biological or adoptive parent. *In loco parentis* means: "In the place of a parent; instead of a parent." *Black's Law Dictionary* 787 (6th ed.1990). In an action for dissolution of marriage or legal separation, the superior court has jurisdiction to award custody or visitation to a parent only; it does not have jurisdiction to award custody or visitation to a person who stands in the place of a parent.

## C.

■ In an action for dissolution or legal separation, the superior court has jurisdiction over only those children common to the parties of the marriage. *See Olvera,* 168 Ariz. at 560, 815 P.2d at 929 ("[T]he legislature intended ... that custody of a child could be awarded in a domestic relations action only if the child is common to the parties of the marriage."). In the present case, once it became clear that the child was not common to the parties of the marriage being dissolved, all visitation issues were then within the determination of the mother (the parent with physical custody of the child), not the court.[3] *See Hughes,* 165 Ariz. at 268, 798 P.2d at 406 ("In the absence of a statute, a custodial parent holds veto power over visitation rights of anyone except the other parent.").

The trial court found that the visitation award to the Fincks was in the best interests of the child, a finding for which there is support in the record. The trial court's efforts were considerable here, but in vain because there was no jurisdiction for the court to put itself, the parties, the step-grandparents, and the child through the emotional and factual inquiry in which they all became engaged. "Courts may do many things in the best interests of children, but they cannot advance such interests by exercising jurisdiction that they lack." *Fenn v. Fenn,* 174 Ariz. 84, 87, 847 P.2d 129, 132 (App.1993).

■ Before superior court jurisdiction expands in domestic relations actions to include

---

**2.** Grandparents have visitation rights in Arizona. "The superior court may grant the grandparents of the child reasonable visitation rights to the child during his minority on a finding that the visitation rights would be in the best interests of the child...." A.R.S. section 25–337.01(A) (Supp.1992).

The grandparent visitation statute is inapplicable to this case. Perhaps conceding (correctly) that a step-grandparent would have no right to visitation, the Fincks sought visitation as *in loco parentis* "parents."

**3.** Darla's fitness was not an issue in the trial court, nor could it have been; the child was not born to the marriage being dissolved. Had the Fincks sought termination, limitation, or supervision of Darla's parental rights, the proper forum was in juvenile court pursuant to A.R.S. sections 8–531 through –544 (1989 & Supp.1992) (termination) and sections 8–201(11), –202, –241(A)(1) (1989 & Supp.1992) (limitation and supervision). For a good discussion of the relationship between the domestic relations statutes and the juvenile code, see *Marshall v. Superior Ct.*, 145 Ariz. 309, 311–12, 701 P.2d 567, 569–70 (1985).

custody or visitation rights of nonparents regarding children not common to the marriage being dissolved, the legislature must first create those rights—and it has not done so. *See Fenn,* 174 Ariz. at 87, 847 P.2d at 132 ("Every power that the superior court exercises in a dissolution proceeding must find its source in the supporting statutory framework.") (citations omitted).

We do not discount the importance that an *in loco parentis* provider can have for a child, and we have no argument with *Bryan*'s discussion on this issue. But, no matter how compelling the facts, the court cannot act in excess of its jurisdiction. As *Bryan* noted: "Since dissolution of marriage is a purely statutory action having no common law origin, the court presiding over such an action has only such express or incidental powers as are conferred by statute." 132 Ariz. at 356–57, 645 P.2d at 1270–71 (footnote omitted).

In conclusion, we reiterate what we said in *Olvera* and what our supreme court said in *Marshall:* "[T]he court has no power to award custody to anyone but a parent under A.R.S. § 25–331(B)(1)." 145 Ariz. at 311 n. 2, 701 P.2d at 569 n. 2. That statement, when tailored to the issues in this special action, would read as follows: "In an action for dissolution of marriage, the court has no power to award visitation to anyone but a biological or adoptive parent of a child common to the parties of the marriage being dissolved. A.R.S. §§ 25–331(B) and –337(A)."

### III.

We accept jurisdiction and grant relief. The trial court award of temporary visitation to the step-grandparents is vacated.

GARBARINO, P.J., and McGREGOR, J., concur.