880 P.2d 624

Darla FINCK, Petitioner,

v.

Honorable Thomas W. O'TOOLE, Judge, Maricopa County Superior Court, Respondent,

Michael E. FINCK and Christopher M. Finck, Minor Child of the Petitioner, By and Through His Court–Appointed Counsel, John P. Moore, Esq., Real Parties in Interest.

No. CV–93–0362–PR.

Supreme Court of Arizona, En Banc.

Sept. 13, 1994.

Mallin & Brown By Robert H. Mallin, and Frederic G. Lemberg, former attys., Phoenix, for petitioner.

Darla J. Burroughs, in pro. per.

Michael E. Finck, in pro. per.

John P. Moore, Phoenix, for real party in interest.

Nancy Opre Logan, P.C. by Nancy Opre Logan, Chandler, Helm & Kyle, Ltd. by Margaret R. Tinsley, Tempe, David P. Arrow and Joy B. Borum, Scottsdale, for amicus curiae.

## OPINION

MOELLER, Vice Chief Justice.

### STATEMENT OF THE CASE

In an action for dissolution of marriage, the trial court awarded temporary visitation to step-grandparents standing *in loco parentis* to a child not common to the parties of the marriage. On special action, the court of appeals vacated the visitation award, holding that the trial court did not have jurisdiction to award visitation to the step-grandparents. *Finck v. Superior Court*, 177 Ariz. 417, 421, 868 P.2d 1000, 1004 (App.1993). We granted the minor child's petition for review because it presents an issue of statewide importance in family law and there are conflicting court of appeals opinions on this issue. We have jurisdiction pursuant to Ariz. Const., art. 6 § 5(3) and Rule 23, Ariz.R.Civ.App.P.

### FACTUAL AND PROCEDURAL BACKGROUND

Darla Finck filed a petition for dissolution of her marriage to Michael Finck. Darla and Michael were married in 1986. The child in question, Christopher Finck, was born two months before the marriage. Both parties admit—and court-ordered blood tests established—that Michael is not the biological fa-

ther of Christopher, although he thought himself to be such until Darla filed the dissolution and disclaimed her husband's parentage.

When Darla filed for dissolution of the marriage, Christopher was living with his step-grandparents (Michael's parents), Edward and Charlene Finck. At the time, Edward and Charlene were acting *in loco parentis* to the child.

Michael is incarcerated and defaulted in the dissolution proceeding. Pursuant to a writ of habeas corpus, the trial court granted Darla's request for custody of Christopher.[1] No one has ever challenged the trial court's award of custody to Darla.

Based on a report and recommendation from Expedited Visitation Services, the trial court awarded Edward and Charlene Finck temporary visitation. Darla objected to the temporary visitation award, arguing then, as she does now, that the trial court lacked jurisdiction to award visitation to the Fincks. Court appointed counsel for the child responded that under *Bryan v. Bryan*, 132 Ariz. 353, 645 P.2d 1267 (App.1982) the court had jurisdiction. In *Bryan*, Division Two of the Court of Appeals held that a trial court in a dissolution proceeding can award visitation to a stepparent standing *in loco parentis* to a child. The trial court in this case relied on *Bryan* in making its contested visitation award.

In a special action by Darla, the court of appeals vacated the visitation award, holding that the trial court did not have jurisdiction to award visitation of a child not common to the parties of the dissolution proceeding. *Finck* 177 Ariz. at 421, 868 P.2d at 1004. The court of appeals disagreed with the analysis of *Bryan* and, instead, found the analyses of *Olvera v. Superior Ct.*, 168 Ariz. 556, 815 P.2d 925 (App.1991), and *Hughes v. Creighton*, 165 Ariz. 265, 798 P.2d 403 (App. 1990) controlling. In *Olvera*, the court of appeals held that "jurisdiction in domestic relations cases is limited, with one exception [not applicable here], to children common to

---

1. Darla was relegated to a habeas corpus proceeding for custody because the Fincks refused, repeatedly, to turn Christopher over to her.

the parties." 168 Ariz. at 560, 815 P.2d at 929. In *Hughes,* the court of appeals held that, in a paternity action, a trial court does not have jurisdiction to award visitation to a person other than a biological or adoptive parent. 165 Ariz. at 268, 798 P.2d at 406. Because there are conflicting court of appeals opinions on this issue, we granted review.

## ISSUE

Whether, in a dissolution proceeding, the superior court has statutory authority to award visitation to step-grandparents, even if they are standing *in loco parentis* to a child.

## ANALYSIS

█ "Visitation rights, whether viewed as a limited form of custody or as a limitation upon the custody rights of another, may be granted only in a jurisdictionally sound custody proceeding." *Bryan,* 132 Ariz. at 355, 645 P.2d at 1269. Thus, in order to award visitation, the trial court must, in the proper proceeding, have custody jurisdiction over the child.

Jurisdiction for determining issues of custody in domestic relations cases is governed by A.R.S. § 25–331:

A. Jurisdiction for child custody proceedings shall be governed by title 8, chapter 4, article 1.

B. A child custody proceeding is commenced in the superior court:

1. By a parent, by filing a petition for either of the following:

(a) Dissolution or legal separation.

(b) Custody of the child in the county in which the child is permanently resident or found.

2. By a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents.

The issue here is not whether the jurisdictional requirements of title 8, chapter 4, article 1 have been met, but rather whether the trial court could properly exercise custody jurisdiction over Christopher in this marital dissolution proceeding under A.R.S. § 25–331(B). We hold that it may not.

█ We agree with the *Olvera* court that, with one exception, A.R.S. § 25–331(B) does not give the trial court authority to determine issues of custody for children *not* common to the parties of the marriage. The exception is contained in A.R.S. § 25–331(B)(2) and applies when a non-parent files a petition for custody and the child is not in physical custody of one of his parents. *Olvera,* 168 Ariz. at 560, 815 P.2d at 929; *cf.* *Bryan,* 132 Ariz. at 355, 645 P.2d at 1269. This exception does not apply here. The Fincks did not file a petition for custody of Christopher pursuant to A.R.S. § 25–331(B)(2) before Christopher was in Darla's custody; rather, they sought (and still seek) a visitation award in a dissolution proceeding between Darla and Michael.

Nor have the Fincks sought custody of Christopher pursuant to the juvenile code, where, in the proper case, the trial court might have jurisdiction to make the necessary child custody determination. *See* A.R.S. § 8–403. Because no party properly "commenced" a child custody proceeding for Christopher, the trial court did not have authority to award the Fincks visitation with him.

We recognize that our reading of A.R.S. § 25–311 does not comport with the court of appeals' analysis in *Bryan.* *Bryan* held that a trial court could award visitation to a step-parent standing *in loco parentis* to a child. In a literal reading of A.R.S. § 25–311, the *Bryan* court held that, by filing a petition for dissolution, a parent commences a child custody proceeding, and that jurisdiction in such a proceeding is not limited to children common to the parties of the marriage. In so holding, the court found it significant that the legislature failed to use the limiting phrase "common to the parties of the marriage," as it did elsewhere in the domestic relations statutes.

Like the court of appeals in this case, we reject *Bryan*'s reading of § 25–311, and for the same reasons. As the *Bryan* court readily conceded, its literal reading of A.R.S. § 25–311 leads to absurd results. For in-

stance, under its analysis, a trial court could award visitation to a stepparent standing *in loco parentis* to a child if the biological parent files the dissolution action, but not if the stepparent files the dissolution action. Moreover, without clear language expressing such an intent, we do not think the legislature intended to change the traditional rule that the authority of divorce courts was limited to children common to the parties of the marriage. *Bryan,* 132 Ariz. at 355, 645 P.2d at 1269; 27C C.J.S. Divorce § 611. We therefore agree with the court of appeals below and disapprove of *Bryan* to the extent that it holds otherwise.

■ Be that as it may, we also conclude that even if the trial court had authority over Christopher's custody, it still could not properly award visitation to the Fincks, even if they, too, were properly before the court.[2] The legislature has seen fit to provide specific procedures for awarding visitation to noncustodial parents, A.R.S. § 25–337, to grandparents, A.R.S. § 25–337.01, and to great-grandparents, *Id.* The legislature has not seen fit to provide for visitation even with stepparents, let alone stepgrandparents. The legislative scheme, naming specific classes of parties to whom visitation may be granted, suggests to us that the legislature did not intend to confer authority to award visitation to unspecified third parties.

We also find it significant that the legislature has imposed substantial limitations even on the visitation rights statutorily granted to grandparents and great-grandparents. A.R.S. § 25–337.01. Notwithstanding what may be in a child's best interest, these persons are only entitled to visitation under certain circumstances (e.g., the child's parents must be divorced or a parent must be deceased for at least three months, A.R.S. § 25–337.01(A), visitation rights terminate when the child is placed for adoption, A.R.S. § 25–337.01(D)). Also important, in the stat-

utorily authorized instances of grandparents and great-grandparents, the legislature has specified a procedure for the party seeking visitation to join or to initiate the appropriate court proceeding. This, of course, gives the trial court jurisdiction over the party seeking visitation and the correlative power to enforce its visitation orders. If we were to accept the Fincks' argument, the trial court would have no such power.

The Kansas Supreme Court has recently spoken on the exact issue with which we are confronted. It held: "We decline the invitation to judicially create a right of unrelated third-party visitation. The Kansas legislature has granted visitation rights to grandparents and stepparents but has not spoken with regard to other unrelated third parties." *In re Hood,* 252 Kan. 689, 847 P.2d 1300, 1303 (1993). So, too, has our legislature opted to limit visitation rights to specific parties; that is, noncustodial parents, grandparents, and great-grandparents.

Therefore, because the Fincks never properly initiated a child custody proceeding pursuant to A.R.S. § 25–331(B)(2) or the juvenile code and because no Arizona statute specifically grants standing to unrelated third parties to claim visitation rights, the trial court was without authority to award visitation to the Fincks.

Obviously, our opinion should not be read as denigrating the importance of continuing a child's relationship with desirable third parties. Particularly in today's society, it may well be in a child's best interest to continue a relationship with different third parties such as stepparents and step-grandparents. However, absent statutory authority, the best interest of the child insofar as visitation is concerned must be determined by the designated custodial parent.[3] In short, if potential court-ordered visitation rights are to be extended to unrelated third parties, we believe the extension is a legislative matter, as was

2. The Fincks have never voluntarily joined this action, nor has anyone joined them involuntarily. However, we dispose of this case on grounds other than non-joinder.

3. The fitness of the custodial parent is not at issue in this case. If the Fincks, or, for that

matter, any other person wish to challenge Darla's fitness to serve as custodial parent, the proper procedure—as mentioned in the text above—is through the juvenile code, not through the domestic relations laws. *See, e.g.,* A.R.S. §§ 8–201 to –601.

and is the case with grandparental and great-grandparental visitation rights.

## DISPOSITION

The trial court did not have authority to award visitation to the step-grandparents. We approve of the result and reasoning of the court of appeals to the extent it is consistent with this opinion. We disapprove of *Bryan v. Bryan*, 132 Ariz. 353, 645 P.2d 1267 (App.1982), to the extent it is inconsistent with this opinion. The trial court's award of visitation to the Fincks is hereby vacated.

FELDMAN, C.J., and CORCORAN, J., concur.

ZLAKET, Justice, specially concurring.

I reluctantly concur because I find no fault with the majority's legal analysis. I write separately to express profound concern over the result, which in my view is potentially harmful to the welfare of not only this child, but others similarly situated.

I disagree with any suggestion that the legislature consciously intended to provide visitation for natural parents, grandparents and even greatgrandparents, and at the same time deliberately decided to withhold such rights from stepparents, step-grandparents and step-greatgrandparents who may have assumed full parental duties and significantly bonded with the child (or children). It is far more likely that the legislature either failed to fully consider this issue or, as the court of appeals concluded in *Bryan v. Bryan*, 132 Ariz. 353, 645 P.2d 1267 (Ct.App.1982), reasonably intended to include those truly standing *in loco parentis* as "parents," at least for purposes of granting visitation.

*Bryan* involved such an award to a stepfather who had assumed all privileges and obligations of fatherhood with respect to his wife's infant daughter. As the court's opinion made clear, he effectively was "the only genuine father [she had] ever really known." *Id.* at 360, 645 P.2d at 1274 (quoting from *Clifford v. Woodford*, 83 Ariz. 257, 266, 320 P.2d 452, 458 (1957)). The appellate court affirmed the award, noting that it was in the child's best interests to provide for some continuation of the relationship after her mother and stepfather were divorced.

I continue to think that the ends of justice were well served by the result in *Bryan*. I concede, however, that statutory authority for the court's determination was at best unclear. It may be significant that although *Bryan* has been on the books for a dozen years, the legislature has in no way rejected or responded to it even in the face of subsequent criticism by a separate division of the court of appeals. *See Olvera v. Superior Court*, 168 Ariz. 556, 558, 815 P.2d 925, 927 (Ct.App.1991). There has also been no indication of legislative disagreement with this court's recent determination that blood alone may not always be sufficient to trump the best interests of the child in matters of parental rights. *See Pima County Juvenile Action No. S–114487*, 179 Ariz. 86, 876 P.2d 1121 (1994).

I see no reason why the legislature would not want the courts to resolve such important human issues. As the majority observes, the statutes appropriately recognize differences between parents, grandparents and great-grandparents, and so it would not be unreasonable to draw similar distinctions with respect to their counterparts in the stepparent chain. Because the intensity of these relationships may vary, the amount of visitation, if any, would have to be tailored accordingly. Each case must necessarily be decided on its own facts. But as long as the court's jurisdiction to make such determinations remains uncertain, the discussion is essentially academic.

There is yet another reason why these questions cry out for legislative clarification. In this case, for example, everyone except the mother was under the impression that the stepfather was the *natural* father of the child until the divorce was filed. The step-grandparents had taken care of and bonded with this child, believing all along that he was their flesh and blood, only to have a cruel trick played on them which now results in the harsh reality that they may be unable to see him again. Under our decision today, the same result would presumably be reached if a "father" in such a situation sought visitation with a child he thought was

his and had raised as his own. *See Hughes v. Creighton,* 165 Ariz. 265, 798 P.2d 403 (Ct.App.1990). Thus, it might be argued that all fathers, married or unmarried, would be well-advised to get blood tests before emotionally investing in relationships with children who might later be completely taken from them. And, stepparents should be cautioned at the outset about the emotional risks of getting close to the children of their spouses. The same dangers face step-grandparents and step-greatgrandparents who dare to engage in such meaningful relationships. All of this seems ludicrous to me, particularly at a time when we so often lament the loss of family ties and values.

Although I believe such consequences were never intended or appreciated by the legislature, I concur that our hands are tied for now.

MARTONE, Justice, specially concurring.

I share the court's view that there is no statutory authority to award visitation to a step-grandparent. The court could have reached this result by simply noting the absence of any statutory authorization for an award of visitation to step-grandparents, in contrast to grandparents under A.R.S. § 25-337.01. Instead, the court addresses the question of custody and holds that A.R.S. § 25-331(B), "does not give the trial court authority to determine issues of custody for children *not* common to the parties of the marriage." *Ante,* at 406, 880 P.2d at 626. In doing so, the court sweeps away *Bryan v. Bryan,* 132 Ariz. 353, 645 P.2d 1267 (Ct.App. 1982), a case in which a stepparent had a true relationship with his stepchild. Although the court's decision on this point is ambiguous, a stepparent might be able to adopt his stepchild and avoid the awesome consequences of today's decision. But I agree with Justice Zlaket that the effect of the court's decision on a stepparent with an established relationship to a stepchild is ripe for legislative inquiry. I also believe that a trial judge may make such temporary orders as are necessary to ensure that a child is not traumatized by the consequences of a dissolution proceeding. See A.R.S. §§ 8-402 to -03.