NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

REBEKAH G., *Appellant,*

*v.*

KATY C., DANIEL C., D.F., H.F., DEPARTMENT OF CHILD SAFETY,
*Appellees.*

No. 1 CA-JV 16-0406
FILED 7-20-2017

Appeal from the Superior Court in Maricopa County
No. JS517874
The Honorable Janice K. Crawford, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Retired Judge Patricia K. Norris[1] joined.

---

**J O N E S**, Judge:

**¶1**         Rebekah G. (Mother) appeals the juvenile court's order terminating her parental rights to D.F. and H.F. (the Children), arguing Katy C. (Aunt), Daniel C. (Uncle), and the Department of Child Safety (DCS) (collectively, Petitioners) failed to prove by clear and convincing evidence that severance was warranted on the ground of abandonment, and failed to prove by a preponderance of the evidence that severance was in the Children's best interests.  For the following reasons, we affirm.

### FACTS[2] AND PROCEDURAL HISTORY

**¶2**         The Children, born in 2000 and 2002, lived with Aunt and Uncle for several months each year between 2004 and 2007 while their parents struggled with drugs, domestic violence, and other social issues. After Mother remarried and moved to India, the Children, then ages seven and five, remained in Arizona and began living with Aunt and Uncle full-time.  When Mother returned to Arizona in 2008, the Children's father (Father) obtained primary physical custody after the Children disclosed they had been molested by Mother's boyfriend, but the Children remained primarily in Aunt and Uncle's care and visited their parents on the weekends.

**¶3**         In 2010, Mother moved to Connecticut.  The Children visited Mother there for one week in 2010, three weeks in 2011, and two weeks in

---

[1]     The Honorable Patricia K. Norris, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2]     "We view the facts in the light most favorable to upholding the juvenile court's order terminating parental rights." *Marianne N. v. DCS*, 240 Ariz. 470, 471 n.1, ¶ 1 (App. 2016) (citing *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010)).

2012. They did not visit Mother in 2013 because D.F. — who suffers from post-traumatic stress disorder (PTSD), partially resulting from being left at an airport by Mother — had a panic attack and refused to get on the airplane. In 2014, Mother moved to California. The Children visited Mother for one week in the summer. In 2015, Mother moved to Missouri, and D.F. visited Mother for one week; H.F. did not go. Thereafter, Mother moved to Utah.

¶4 Between 2010 and 2015, Mother returned to Arizona on occasion. However, Mother did not always visit the Children, and when she did, her visits were short. Although she did send gifts, Mother did not spend holidays with the Children except for one birthday each. Since 2010, Mother may have taken H.F. to a doctor's appointment, but she did not come to Arizona when the Children were hospitalized following a car accident and did not ask to be involved in the Children's healthcare. She had not taken the Children to any dental appointments and had attended less than ten school events or extracurricular activities. And though Mother initially had regular telephone contact with the Children, the frequency of the calls lessened over time and by 2015, Mother used the opportunity to tell the Children they were "bitchy and spoiled . . . brats."

¶5 Meanwhile, Aunt and Uncle performed all tasks of day-to-day parenting, shared family dinners, helped the Children with homework, enrolled them and transported them to school and extracurricular activities, taught them to swim and ride bikes, and engaged them in counseling to help them cope with issues arising from their strained relationships with their parents. Aunt and Uncle provided financially for the Children without any assistance from Mother, including medical and dental care, counseling, orthodontics, eyeglasses and contact lenses, clothing, food, extracurricular activities, and entertainment. Mother testified she did not send money because Aunt and Uncle never asked for it, but when Aunt and Uncle did ask Mother to pay a portion of the Children's medical, dental, orthodontic, and counseling expenses, Mother claimed she should not be responsible for medical services not approved by her in advance.

¶6 In September 2015, Mother contacted Aunt and suggested Aunt and Uncle adopt the Children because "it would be healthy for them[;] . . . they need some real parents." Aunt assured Mother she would still have a relationship with the Children, but after Aunt retained an attorney to prepare the necessary paperwork, Mother advised she was no longer in agreement with the adoption.

¶7 In October 2015, Aunt and Uncle filed a petition to terminate Mother's parental rights.[3] In December 2015, the Children's guardian ad litem (GAL) filed a petition alleging the Children were dependent as to Mother; DCS joined the petition and was designated a co-petitioner. Mother, who had returned to Arizona, was referred for individual and family counseling. But after the Children, now fifteen and thirteen years old, told Mother they wanted to be adopted by Aunt and Uncle, Mother began leaving threatening voicemail and text messages for the Children and chased D.F. for two blocks after a court hearing. In January 2016, the juvenile court, at the GAL's request and upon the recommendation of the Children's therapist, ordered all contact between Mother and the Children be done through the DCS case manager. The court encouraged Mother to send cards, gifts, and letters to the Children to re-establish a relationship. She did not do so. Shortly before the contested hearing in September 2016, the GAL filed a motion to appoint Aunt and Uncle as permanent guardians of the Children.

¶8 At the contested hearing in September 2016, Mother acknowledged she had no parent-child relationship with the Children but blamed Aunt and Uncle for brainwashing the Children and disrupting the relationship "[j]ust by basically making the presence in their own home wonderful, and the presence around [Mother] unsafe." However, Mother never requested assistance from the family court to obtain custody or parenting time or even complained about the arrangement; to the contrary, Mother thanked Aunt and Uncle for taking care of the Children and encouraged them to adopt the Children. And although Mother denies abandoning the Children, she admits she "gave up fighting" to have the Children with her and agrees they might have "abandonment issues." Mother testified she did not believe D.H. suffered from PTSD or that the Children were molested by her previous boyfriend. She was unable to provide basic facts about the Children, such as where they want to go to college, what they want to be when they grow up, or where they want to live. Nonetheless, her goal was to have them "back" in her care full-time, and she would continue to "fight to have the girls forced to be with [her]" and would only stop "if [she's] dead."

¶9 The Children indicated they consider Aunt and Uncle their parents, want to stay in their care, and did not want to have any contact with Mother. The Children's therapist described the debilitating anxiety

---

[3] Aunt and Uncle also petitioned to terminate Father's parental rights, but that petition was withdrawn after Father consented to the adoption of the Children by Aunt and Uncle.

the Children, particularly D.F., experience after years of knowing "a biological parent can swoop down and take them out of their stability" at any time, as well as their anger at being abandoned and their fear of abuse and neglect if left in Mother's care. The therapist also reported H.F. threatened to run away if placed with Mother and, if prevented from doing so, would physically harm Mother.

¶10         Aunt described the Children's relationship with Mother as up-and-down but opined the Children would benefit from severance because it would free them from Mother's erratic behavior and "give them the opportunity to choose the relationship that they have with their mother." She also stated she would continue to encourage and facilitate a relationship between Mother and the Children so long as it was in their best interests. The DCS case manager testified taking the Children on vacation once per year was not a normal parental relationship and placing the girls with Mother would be emotionally damaging to them. Thus, she concluded it was in the Children's best interests to stay with Aunt and Uncle, who were willing and able to adopt them, where they would be stable, happy, and successful.

¶11         After taking the matter under advisement, the juvenile court adjudicated the Children dependent and found Petitioners proved by clear and convincing evidence termination of Mother's parental rights was warranted because Mother had abandoned the Children. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(1).[4] The court denied a request to appoint Aunt and Uncle as permanent guardians, finding instead that severance was in the Children's best interests. Accordingly, the court entered an order terminating Mother's parental rights. Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**I.      Petitioners Proved Abandonment by Clear and Convincing Evidence.**

¶12         To terminate a parent's rights, the juvenile court must find clear and convincing evidence to support at least one statutory ground for severance. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000) (citing A.R.S. § 8-533(B)). Pursuant to A.R.S. § 8-533(B)(1), a parent's rights

---

[4]      Absent material changes from the relevant date, we cite a statute's current version.

may be terminated if "the parent has abandoned the child." Abandonment is defined as:

> [T]he failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes *prima facie* evidence of abandonment.

A.R.S. § 8-531(1). On review, we accept the court's factual findings unless they are clearly erroneous but review legal conclusions *de novo*. *Michael M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 230, 233, ¶ 10 (App. 2007) (citing *Pima Cty. Juv. Dependency Action No. 118537*, 185 Ariz. 77, 79 (App. 1994), and then *Ariz. Dep't of Econ. Sec. v. Superior Court (P.S. & J.S.)*, 186 Ariz. 405, 408 (App. 1996)).

¶13 Mother argues insufficient evidence supports the juvenile court's finding of abandonment because she claims she intended only "to place [the Children] in the aunt's custody without the intent to abandon the[m]." But whether a parent has abandoned a child "is measured not by a parent's subjective intent, but by the parent's conduct." *Michael J.*, 196 Ariz. at 249, ¶ 18; *see also Maricopa Cty. Juv. Action No. JS-4374*, 137 Ariz. 19, 23 (App. 1983) (holding "the primary predicate" for a finding of abandonment is "whether there has been conduct on the part of the parent which shows a conscious disregard of the obligations which are owed by a parent to a child and which lead to destruction of the parent-child relationship") (citing *Anonymous v. Anonymous*, 25 Ariz. App. 10, 12 (1975)). Here, Mother's conduct supports the finding of abandonment.

¶14 As noted above, Mother admitted she did not have a normal parent-child relationship with the Children. The juvenile court did not find Mother's testimony that she maintained regular contact with the Children credible; nor does the evidence suggest Mother supported the Children financially during any period they were not in her direct care. Although Mother blames Aunt and Uncle for alienating the Children from her, she never complained about the arrangement before the petition was filed and did not take any legal action through the family court to reassert her rights to custody and visitation. Instead, the record supports a finding that Mother consciously disregarded her parental obligations and was apparently content to spend a few weeks a year vacationing with the

Children while allowing Aunt and Uncle to perform the day-to-day parenting tasks, address the Children's physical and mental health needs, and provide for the Children financially for almost ten years. Petitioners proved Mother failed to maintain a normal parental relationship with the Children without just cause, and we find no error.

**II.    Petitioners Proved Severance was in the Children's Best Interests by a Preponderance of the Evidence.**

¶15      To terminate parental rights, the juvenile court must also find by a preponderance of the evidence severance is in the child's best interests. A.R.S. § 8-533(B); Ariz. R.P. Juv. Ct. 66(C); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). Termination is in a child's best interests if the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004) (citing *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 557 (App. 1997), and then *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990)). We review the propriety of a best interests finding for an abuse of discretion, *see Orezza v. Ramirez*, 19 Ariz. App. 405, 409 (1973) (citation omitted), and will affirm the finding so long as it is supported by reasonable evidence, *see Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citations omitted).

¶16      Mother argues Petitioners failed to prove severance was in the Children's best interests because she shares a loving relationship with them "and wants them in her life." But Mother's feelings do not control. *See Finck v. O'Toole*, 179 Ariz. 404, 408 (1994) (Zlaket, J., specially concurring) ("[B]lood alone may not always be sufficient to trump the best interests of the child in matters of parental rights.") (citing *Pima Cty. Juv. Action No. S-114487*, 179 Ariz. 86, 97 (1994)); *see also Dominique M. v. DCS*, 240 Ariz. 96, 98-99, ¶ 12 (App. 2016) ("The existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests.") (citing *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 351, ¶ 30 (App. 2013)). Indeed, "[e]ven in the face of such a bond, the juvenile court is required to evaluate the totality of circumstances and determine whether severance is in the best interests of the children." *Dominique M.*, 240 Ariz. at 99, ¶ 12 (citing *Bennigno R.*, 233 Ariz. at 351-52, ¶ 31).

¶17      Although Mother testified termination was not in the Children's best interests because "[she] is their biological mother . . . [and] their blood," and "[she] do[es]n't deserve [] to have [her] rights severed," this position is grounded in her own interests rather than those of the

Children. In contrast, the record contains evidence the Children have suffered harm and would continue to suffer harm by maintaining the relationship with Mother, who has shown she is unwilling to put the Children's interests above her own. The record demonstrates both Children require ongoing therapy to process their feelings regarding being abandoned by Mother and their anxiety over the future. And the Children have an interest in permanency, which can be achieved by freeing them for adoption by Aunt and Uncle, who have demonstrated beyond measure their willingness and ability to provide the Children an appropriate home where they are cared for and loved. Under these circumstances, we find no abuse of discretion.

¶18 Alternatively, Mother argues the juvenile court erred in terminating her parental rights instead of implementing a permanent guardianship that would preserve her relationship with the Children.[5] However, a permanent guardianship is only appropriate where "[t]he likelihood that the child would be adopted is remote or termination of parental rights would not be in the child's best interests." A.R.S. § 8-871(A)(4). Neither condition applies here. Indeed, the court specifically found that severance and adoption by Aunt and Uncle was the most appropriate course in light of "the clear and convincing evidence that [Aunt and Uncle] will continue to allow Mother to have [a] relationship with the Children if Mother is able to be appropriate and if the Children want a relationship."

¶19 Moreover, the record supports a finding that the Children would be harmed by a permanent guardianship because the guardianship is subject to revocation. *Compare* A.R.S. § 8-539 (stating an order terminating parental rights permanently "divest[s] the parent and the child of all legal rights, privileges, duties and obligations with respect to each other"), *with* A.R.S. § 8-873(A)(1) (stating an order granting permanent guardianship may be revoked and custody returned to the parent when "there is a significant change of circumstances" such as when "[t]he child's parent is able and willing to properly care for the child"). Given Mother's stated intent to pursue custody of the Children until death, *see supra* ¶ 8, and her historical inability to consistently provide proper care for the

---

[5] Mother also argues the juvenile court erred in denying the motion "on a technicality," because it was not verified as required by A.R.S. § 8-872. The record reflects, however, that the court also denied the motion on its merits.

Children, a guardianship would not benefit the Children because it would not provide them stability or permanency.  Accordingly, we find no error.

## CONCLUSION

¶20        The juvenile court's order terminating Mother's parental rights to the Children is affirmed.

